172 F.3d 927
 Jeffery BROWN; Lynette Brown; Kevin Johnson; Keith
Johnson; Crystal Reid, by and through their
mother and next friend Lynette Brown,
Plaintiffs-Appellants,
v.
William SHANER; William Goodlet; City of Toledo,
Defendants-Appellees.
 No. 97-4406.
 United States Court of Appeals,
Sixth Circuit.
 Argued Jan. 26, 1999.
Decided April 15, 1999.
 
 Alan W. Penamon (argued and briefed), Toledo, Ohio, for Plaintiffs-Appellants.
 Samuel J. Nugent (argued and briefed), Office of the City of Toledo, Law Department, Toledo, Ohio, for Defendants-Appellees.
 Before: MERRITT and MOORE, Circuit Judges; DUGGAN, District Judge.*
 MERRITT, Circuit Judge.
 
 
 1
 On March 11, 1995, defendants William Shaner and William Goodlet of the Toledo, Ohio, Police Department went to the residence of plaintiff Jeffery Brown to arrest him pursuant to six outstanding arrest warrants. Both officers were in uniform and were conspicuously identified as Toledo police officers. When they arrived, both Brown and his wife Lynette were asleep in their bedroom. Her children (from two previous marriages) were awake and inside the house. The officers instructed one of the children that they wanted to see the plaintiff, and the message was quickly relayed to Mr. and Mrs. Brown. The inside door to the house was open, but the outer screen door remained closed.
 
 
 2
 Mr. Brown came to the door and spoke to the officers through the screen door, which was now slightly ajar; he did not let the officers into his home. When the officers asked Mr. Brown to come outside so that they could speak to him, he responded that he wished first to get dressed, as he was inappropriately attired, having just been stirred from his bed. He then shut both doors and went to put on clothes. Shortly thereafter, the police officers began pounding loudly on the door and yelling racial epithets, thereby frightening the children. The officers proceeded to enter the house and apprehend Mr. Brown, further abusing him verbally, assaulting him physically, and threatening his life. Ultimately, they placed Brown in handcuffs and transported him to the county jail.
 
 
 3
 Plaintiffs filed a Complaint with the Toledo Police Division Internal Affairs Unit, which resulted in an investigation leading to a determination that the allegations against defendants Shaner and Goodlet were "unfounded." On April 10, 1996, plaintiffs filed their original Complaint in the Lucas County (Ohio) Court of Common Pleas, purporting to assert claims of assault, battery, false arrest/imprisonment and the deprivation of constitutional rights under 42 U.S.C. § 1983. Officers Shaner and Goodlet were the only defendants named in this pleading. The capacity in which they were sued under § 1983 was not specified.
 
 
 4
 On April 15, 1996, plaintiffs filed an Amended Complaint in state court, naming the City of Toledo as an additional defendant and raising a state tort claim for negligence due to the City's alleged failure to train and supervise Shaner and Goodlet. The Amended Complaint too failed to state whether the officers were being sued under federal law in their individual or official capacities. The action was then removed to the U.S. District Court for the Northern District of Ohio. In their removal statement, the defendants wrote that the officers were "not named in this action in their individual capacities and, therefore, this action is deemed to be one alleged against only the City of Toledo."
 
 
 5
 On July 15, 1996, District Judge James Carr conducted a case management conference at which the defendants' counsel stated that the defendants had not been named in this action in their individual capacities and that the action was essentially one exclusively against the City of Toledo. Judge Carr thus extended an invitation to plaintiffs' counsel to amend the Complaint again, which invitation was declined.
 
 
 6
 Prior to jury impanelment, counsel were informed that District Judge John Potter would preside at trial due to Judge Carr's unavailability. On January 17, 1997, after voir dire, defendants presented an oral Motion to Dismiss based on the sufficiency of plaintiff's Amended Complaint to state a cause of action pursuant to § 1983. The trial court granted defendants' motion, finding (1) that the Amended Complaint did not specify claims against the officers in their individual capacities with sufficient clarity, and (2) that the only defendant in the action was the City of Toledo. Nonetheless, the court again extended plaintiffs a second opportunity to amend their complaint on or before March 21, 1997.
 
 
 7
 On March 18, 1997, plaintiffs filed their Second Amended Complaint, finally naming defendants Shaner and Goodlet in their individual capacities and alleging that they illegally entered and searched his residence. Plaintiffs also contended that the defendants arrested Mr. Brown without probable cause and through the use of excessive physical force. The City was also named as a defendant, and was alleged both to have maintained a policy and/or custom of inadequate police officer training and to have ratified the constitutional deprivations through its failure to punish the officers for their conduct in this incident.
 
 
 8
 On April 8, 1997, defendants filed a Rule 12(b)(6) Motion to Dismiss, arguing that plaintiffs' claims were barred by the applicable 2-year statute of limitations. Plaintiffs responded that the limitations statute was satisfied because their Second Amended Complaint related back to the date of the filing of their original Complaint. On May 20, 1997, the City of Toledo filed a Motion for Summary Judgment, asserting that there was no evidence to suggest that the alleged civil rights violations were the result of a departmental or city policy.
 
 
 9
 On June 23, 1997, the district court granted each of these motions, dismissing plaintiffs' claims against the defendants and entering summary judgment against the plaintiffs with respect to their claims against the city. With regard to the Motion to Dismiss, the district court ruled that the officers were not named as individual capacity defendants until March 18, 1997, after the 2-year statute of limitations had expired. As for the City's Motion for Summary Judgment, the district court held that Plaintiffs presented no evidence upon which a reasonable jury could find that the City of Toledo had maintained some policy or custom allowing unlawful dwelling entry or the use of excessive physical force during arrest.
 
 
 10
 This timely appeal ensued on November 12, 1997. First, Plaintiffs argue that the evidence they submitted in support of their contention that the City of Toledo had a policy of poorly training its officers was sufficient to withstand summary judgment. Second, they maintain that they did in fact state individual capacity claims prior to the expiration of the statute of limitations. Alternatively, they contend that such claims were timely insofar as they relate back to the filing of their original Complaint. For the following reasons, we affirm the district court's granting of the City's Motion for Summary Judgment, but reverse its decision to grant the Officers' Motion to Dismiss.
 
 I. Municipal Liability
 
 11
 The instant matter requires this Court to address only the question whether plaintiffs' evidence in support of their contention that the City of Toledo had a policy of poorly training its officers was sufficient to withstand summary judgment. The Supreme Court enunciated the standards for adjudging government inaction in both City of Oklahoma City v. Tuttle, 471 U.S. 808, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985), and City of Canton, Ohio v. Harris, 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989), a case that arose out of this Circuit.
 
 
 12
 In Tuttle, an individual was shot and killed by a police officer. His family sued, claiming that the officer's excessive use of force was caused by a municipal policy of inadequate training of officers. The Supreme Court, in a plurality opinion by Justice Rehnquist, stated that the district court erred in its instructions to the jury, which allowed a finding that there was a policy of inadequate training on the basis of one incident:
 
 
 13
 We think this inference unwarranted; first, in its assumption that the act at issue arose from inadequate training, and second, in its further assumption concerning the state of mind of the municipal policymakers. But more importantly, the inference allows a § 1983 plaintiff to establish municipal liability without submitting proof of a single action taken by a municipal policymaker.... Monell 's "policy or custom" requirement should make clear that, at the least, that requirement was intended to prevent the imposition of municipal liability under circumstances where no wrong could be ascribed to municipal decisionmakers. Presumably, here the jury could draw the stated inference even in the face of uncontradicted evidence that the municipality scrutinized each police applicant and met the highest training standards imaginable. To impose liability under those circumstances would be to impose it simply because the municipality hired one "bad apple."
 
 
 14
 471 U.S. at 820, 105 S.Ct. 2427 (citing Monell v. Department of Soc. Servs., 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (holding that cities are liable only for constitutional violations resulting from their official policies and customs)).
 
 
 15
 In Canton, the Supreme Court resolved the uncertainty as to the legal standard necessary to prove a policy based on government inaction and held that demonstrating a policy of inadequate training requires proof of deliberate indifference by the government. The plaintiff, Geraldine Harris, claimed to have been injured by the failure of the city to instruct police officers to recognize medical ailments and to summon treatment. When she was ill at the police station following her arrest, the officers did not provide or summon any medical assistance.
 
 
 16
 The Supreme Court rejected the municipality's contention that section 1983 liability can be imposed only where the municipal policy in question is itself unconstitutional. See 489 U.S. at 387, 109 S.Ct. 1197. A municipal policy that causes constitutional violations can be the basis for section 1983 liability. Furthermore, however, the Court held that "the inadequacy of police training may serve as the basis for section 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police came into contact." Id. at 388, 109 S.Ct. 1197 (emphases added). The Court declared: "Only where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality--a policy as defined by our prior cases--can a city be liable for such a failure under section 1983." Id. at 389, 109 S.Ct. 1197.
 
 
 17
 The Court indicated at least two types of situations that would justify a conclusion of deliberate indifference in the failure to train police officers. One is failure to provide adequate training in light of foreseeable consequences that could result from the lack of instruction. For example, the Court indicated that lack of instruction in the use of firearms or in the use of deadly force could constitute "deliberate indifference." Id. at 390, 109 S.Ct. 1197. A second type of situation justifying a conclusion of deliberate indifference is where the city fails to act in response to repeated complaints of constitutional violations by its officers.
 
 
 18
 In granting the City of Toledo's Motion for Summary Judgment, the district court in the instant matter held that the plaintiffs presented no evidence upon which a reasonable jury could find that the City had maintained some policy or custom allowing unlawful dwelling entry or the use of excessive physical force during arrest. We agree. First, beyond mere allegation, the plaintiffs offer no evidence to show that the City of Toledo failed to adequately train Shaner and/or Goodlet regarding the law of search and seizure and the use of force in securing an arrest. Second, the plaintiffs have produced no evidence indicating that the City either on this occasion or in the past failed to investigate and discipline the use of excessive force by its police personnel where such discipline was justified. Plaintiffs contend that the appropriate standard by which to judge their pleadings was set forth by the Supreme Court in Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993). In Leatherman, the Supreme Court addressed the question whether a federal court may apply a heightened pleading standard more stringent than the usual pleading requirements of Rule 8(a) of the Federal Rules of Civil Procedure in civil rights cases alleging municipal liability under section 1983. In reviewing a lower court decision granting a motion to dismiss--not, as in the instant matter, a motion for summary judgment--the Court answered that question in the negative. See id. at 168, 113 S.Ct. 1160. The Court stated:
 
 
 19
 The phenomenon of litigation against municipal corporations based on claimed constitutional violations by their employees dates from our decision in Monell, where we for the first time construed § 1983 to allow such municipal liability. Perhaps if Rules 8 and 9 were rewritten today, claims against municipalities under § 1983 might be subjected to the added specificity requirement of Rule 9(b). But that is a result which must be obtained by the process of amending the Federal Rules, and not by judicial interpretation.
 
 
 20
 Id. at 168, 113 S.Ct. 1160. However, the Court concluded: "In the absence of such an amendment, federal courts and litigants must rely on summary judgment and control of discovery to weed out unmeritorious claims sooner rather than later." Id. at 168-69, 113 S.Ct. 1160 (emphasis added). In the instant matter, the district court, based on its careful review of the pleadings and evidence, properly did precisely that. Accordingly, its judgment granting the City's Motion for Summary Judgment is affirmed.
 
 
 21
 II. Relation Back Under Federal Rule of Civil Procedure 15(c).
 
 
 22
 When the instant matter was first filed in state court, Plaintiffs, asserting claims of assault, battery, false arrest/imprisonment and the deprivation of their constitutional rights under section 1983, named as defendants only Officers Shaner and Goodlet. The capacity in which they were sued under section 1983 was not specified. Likewise, their First Amended Complaint did not specify whether the officers were being sued under federal law in their individual or official capacities. By contrast, however, plaintiffs' Second Amended Complaint, filed pursuant to the invitation of the lower court, explicitly named Shaner and Goodlet in their individual capacities, alleging that they illegally entered and searched the plaintiffs' residence and that they searched Mr. Brown without probable cause and through the use of excessive physical force. However, the district court subsequently granted defendants' Rule 12(b)(6) Motion to Dismiss on the ground that the officers were not named as individual capacity defendants until March 18, 1997, after the applicable two-year statute of limitations had expired, as the incident in question occurred on March 11, 1995. We believe the district court erred and that the Second Amended Complaint relates back to April 10, 1996, the date of the original pleading, under Rules 15(c)(2) and 15(c)(3) of the Federal Rules of Civil Procedure.
 
 
 23
 Rule 15(c), as amended in December 1991, provides, in pertinent part:
 
 
 24
 An amendment of a pleading relates back to the date of the original pleading when
 
 
 25
 (1) relation back is permitted by the law that provides the statute of limitations applicable to the action, or
 
 
 26
 (2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, or
 
 
 27
 (3) the amendment changes the party or the naming of the party against whom a claim is asserted if the foregoing provision (2) is satisfied and, within the period provided for by Rule 4(m) for service of the summons and complaint, the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.
 
 
 28
 Fed.R.Civ.P. 15(c) (emphases added). Note that each of the conjunctions connecting the three parts of Rule 15(c) is "or," not "and". The rule is based on the notion that once litigation involving particular conduct or a given transaction or occurrence has been instituted, the parties are not entitled to the protection of the statute of limitations against the later assertion by amendment of defenses or claims that arise out of the same conduct, transaction, or occurrence as set forth in the original pleading. Thus, the rule states that amendments meeting this standard relate back to the date of the initial pleading.
 
 
 29
 The district court, acknowledging that the claims asserted in the amended pleading arose out of the conduct set forth in the original complaint, see JA 154, concluded that the naming of the defendants in their individual capacity in the amended complaint constituted a change in the parties, thus requiring compliance with Rule 15(c)(3), which the district court found to be lacking. While we do not necessarily agree with the district court that identifying the defendants in their "individual" capacities in the amended complaint constitutes a change in parties, we need not decide that issue in this case because even if plaintiff's amended complaint were deemed to assert a change in parties, we are satisfied that the requirements of 15(c)(3) have been met.
 
 
 30
 In Lovelace v. O'Hara, 985 F.2d 847 (6th Cir.1993), this Court considered the case of plaintiff Bonnie Lovelace, who filed a section 1983 action against Officer Lark O'Hara of the Pendleton County (Kentucky) Sheriff's Department, alleging violations of her Fourth, Fifth, and Fourteenth Amendment rights. The original complaint against O'Hara stated:
 
 
 31
 At all times referenced herein, the defendant was employed by the Pendleton County Sheriff's Department acting within the scope and course of his employment therein; not as an individual, but rather under the color and pretense of the title of his office; under the authority of his office as a police officer; clearly within the expressed and implied powers of his capacity.
 
 
 32
 Id. at 849.
 
 
 33
 The district court treated the complaint as being against O'Hara in his official capacity and granted summary judgment to the Sheriff's Department. However, the court also granted Mrs. Lovelace leave to file an amended complaint naming O'Hara in his individual capacity without prejudice to any motion by the defendant to dismiss the amended complaint on the grounds of qualified immunity or the statute of limitations. The district court subsequently granted Mrs. Lovelace's motion to amend the complaint despite the running of the one-year statute of limitations, holding that the amended complaint related back to the original complaint under Rule 15(c) because the language of the original complaint was broad enough to give O'Hara notice that he was being sued in his individual capacity. However, the district court then considered and granted O'Hara's motion for summary judgment on the ground of qualified immunity.
 
 
 34
 On appeal, this Court considered the relation back question only under Rule 15(c)(3), not under subsection (c)(2) as providing an independent basis for applying the relation back doctrine. With respect to the notice question under subsection (c)(3), the Court stated that it was
 
 
 35
 not convinced that O'Hara had such notice of the suit during the 120 days following the filing of the original complaint that his defense will not now be prejudiced. O'Hara does not contend that he did not have general knowledge of the lawsuit. However, he argues that the first notice he had that he was being sued in his individual capacity was when Mrs. Lovelace filed her amended complaint. This occurred several months after the 120 days allowed for service of the summons and complaint. Suit in his individual capacity exposed O'Hara to the possibility of having to pay damages from his personal assets. He argues that he has been prejudiced because if he had known that he was being sued in his individual capacity, he may have retained independent counsel or participated more fully in the defense.
 
 
 36
 985 F.2d at 850. This Court agreed that O'Hara's argument had merit. See id.
 
 
 37
 Lovelace does not control this case. First, the Court did not consider the complaint independently under (c)(2), but seems to have assumed without comment that (c)(2) was inapplicable in this case as a basis for relation back. The Court's silence regarding the availability of (c)(2) leaves open for this Court to decide whether (c)(2) affords an independent basis for relation back. Second, even if we were to focus on (c)(3), Lovelace is distinguishable because it was not "apparent" in Lovelace that O'Hara knew or should have known of a "mistake" in the identity of the party set forth in the pleadings. In finding that O'Hara had a right to believe he was being sued in his official, and not his individual, capacity, we stated:
 
 
 38
 Here the original complaint contained a statement that O'Hara acted "not as an individual" but "clearly within the expressed and applied powers of his official capacity." From this statement, it seems clear that Mrs. Lovelace intended to hold the state responsible for O'Hara's actions. O'Hara had no reason to believe that he would be held personally liable or that his personal assets were at stake.
 
 
 39
 Id. at 850-51.
 
 
 40
 In the instant matter, by contrast, plaintiffs' Original Complaint did not speak in such unequivocal terms; indeed, while it named both individual defendants, it did not state the capacity in which they were being sued, which oversight was first corrected in the Second Amended Complaint. All of the defendants' wrongdoing related to their personal conduct. Indeed, defendants' counsel acknowledged at oral argument that it was clear from a reading of the complaint that these defendants could not be held liable in their official capacity. We therefore find that plaintiffs' failure to add the word "individual" to his original complaint was a simple "mistake" and that both defendants "knew or should have known" that but for this omission concerning the capacity in which they were being sued, the action would have been brought against them in their "individual" capacity. Both Shaner and Goodlet knew that they were being sued under section 1983 as early as April 10, 1996, when plaintiffs filed their original Complaint in state court; to wit, they were the only defendants named in that pleading. Even if the specific capacity in which they were being sued was not clear until later, this was not a case where that temporary omission could have led defendants to believe that they themselves could not be liable. Both men "received such notice of the institution of the action that" they were not "prejudiced in maintaining a defense on the merits." Fed.R.Civ.P. 15(c)(3). We therefore conclude that the Plaintiffs' Second Amended Complaint relates back to the date of the filing of the Original Complaint under both Rule 15(c)(2) and 15(c)(3) of the Federal Rules of Civil Procedure.[1]
 
 
 41
 The judgment of the district court granting the Officers' Motion to Dismiss is therefore reversed.
 
 
 
 *
 The Honorable Patrick J. Duggan, United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 Subsection (c)(3) of Rule 15 incorporates subsection (c)(2), which provides that an amended pleading alleging a new or different claim or defense will not relate back unless it "arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading...." Fed.R.Civ.P. 15(c)(2). In the instant matter, there is no question that the original and amended complaints clearly involve the same conduct. With respect to the defendants, the only difference between the two pleadings is the capacity in which they were named. Relation back under Rule 15(c)(2) thus also applies