**James J. MAYO, Plaintiff–Appellant,**

v.

**MACOMB COUNTY, Michigan and Deputy Brossard, Defendants– Appellees.**

**No. 98–1467.**

United States Court of Appeals, Sixth Circuit.

Argued April 29, 1999.

Decided July 8, 1999.

Rehearing and Suggestion for Rehearing En Banc Denied Aug. 19, 1999.

Gregory T. Zalecki (argued and briefed), Sterling Heights, MI, for Plaintiff–Appellant.

James S. Meyerand (argued and briefed), Macomb County Corporation Counsel, Mt. Clemens, MI, for Defendants–Appellees.

Before: ENGEL, NELSON, and NORRIS, Circuit Judges.

## OPINION

ENGEL, Circuit Judge.

Plaintiff James Mayo challenges the district court's grant of summary judgment in favor of defendants Macomb County Deputy Sheriff Jeffrey Brossard and Macomb County in Mayo's 42 U.S.C. § 1983 action stemming from his arrest in a domestic dispute. For the following reasons, we AFFIRM the district court.

## I.

On August 10, 1996, Sherry Lynne Mayo, estranged wife[1] of the plaintiff, dialed 911 complaining that the plaintiff was pounding on the door of their home and demanding that he be allowed to enter.

---

1. The Mayos were a married couple with three children who lived in a mobile home on Carousel Court in Macomb Township, Michigan. Marital difficulties developed between the two which resulted in a divorce case being filed at or near the time of the incident which is at issue here.

Deputy Brossard responded to the call and was advised en route that a Law Enforcement Information Network ("LEIN") check showed that a valid Personal Protection Order ("PPO") existed on behalf of Mrs. Mayo against the plaintiff. Furthermore, Deputy Brossard was told that the Sheriff's Department had, in the last ten days, been called out to the Mayo home four other times.

As Deputy Brossard arrived at the Mayo home, he observed the plaintiff sitting on the front deck of the home. Deputy Brossard asked him for identification and then asked him to sit in the rear of the patrol car while he spoke with Mrs. Mayo. The plaintiff complied with the officer's request, and Deputy Brossard began to interview Mrs. Mayo. Deputy Brossard first noted that Mrs. Mayo was crying and visibly upset over the incident. He then noticed that a wooden chair was jammed under the door knob of the front door. When asked about this, Mrs. Mayo answered that the chair was placed there for extra security in keeping the plaintiff out of the home. Deputy Brossard then asked Mrs. Mayo what had happened. She stated that the plaintiff had arrived at the mobile home and began to pound on the front door, swearing and demanding that he be allowed to enter. Mrs. Mayo said that she then dialed 911. She further revealed that the plaintiff had been arrested and convicted of domestic violence upon her in 1995 and was placed on probation for one year. Finally, she stated that she had recently obtained a PPO against her husband because of his history of violence and her fear of him.

Deputy Brossard then began to interview the plaintiff, who admitted that he had been served with the PPO. Plaintiff stated that he had come to the property to pick up some of his clothes. Deputy Brossard checked the LEIN system for himself and found that a valid PPO had indeed been served on the Mr. Mayo and that the LEIN report stated that Mr. Mayo was "RESTRAINED FROM SHERRY LYNN MAYO." The LEIN report also contained the following statements: (1) "DO NOT ARREST UNLESS A VIOLATION OF INJUNCTIVE ORDER HAS BEEN VERIFIED CONTACT ORI FOR SPECIFIC CONTENT OF ORDER"; (2) "CONFIRM SPECIFIC CONTENT OF ORDER WITH MI5002400MSP RICHMOND." It is undisputed that Deputy Brossard never saw the actual PPO, and there is no evidence that he had knowledge of the "confirm" language. Deputy Brossard, relying on the language "RESTRAINED FROM SHERRY LYNN MAYO," arrested Mr. Mayo without checking the actual PPO.

Mr. Mayo spent the next two days in jail (since it was a weekend), and on August 12, 1996, appeared before Judge Bucci of the Macomb County Circuit Court. Judge Bucci dismissed the charges against Mr. Mayo based on several errors, none of which was related to any defect in the arrest. Mr. Mayo then filed suit in federal district court on May 5, 1997, alleging claims under 42 U.S.C. § 1983 for a violation of his constitutional right to be free from arrest without probable cause as well as state claims for malicious prosecution, false arrest, false imprisonment, and defamation of character. Mr. Mayo also made claims alleging state deprivation of constitutional due process rights, his right to be free from unreasonable searches and seizures and to be free from deprivation of liberty without due process of law.

On March 13, 1998, the district court granted the defendants' motion for summary judgment, and subsequently dismissed Mr. Mayo's complaint. It held, among other things, that Brossard had probable cause to arrest Mayo, that Brossard was entitled to qualified immunity because his decision to arrest Mayo was objectively reasonable, and that Macomb County could not be liable because no constitutional violation was established. On April 9, 1998, Mr. Mayo filed this timely appeal.

## II.

We review the district court's grant of summary judgment de novo. See *McLaurin v. Morton*, 48 F.3d 944, 947 (6th Cir. 1995). Summary judgment is only appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); see also *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 n. 4, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The doctrine of qualified immunity generally shields someone such as Deputy Brossard " 'from liability for civil damages insofar as [his] conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known.' " *Ward v. Dyke*, 58 F.3d 271, 273 (6th Cir.1995) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). The proper test here is whether it was "objectively reasonable for [Deputy Brossard] to believe that his actions were lawful at the time of the challenged act." *Anderson v. Creighton*, 483 U.S. 635, 641, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). Indeed, the official can even be mistaken; if his conduct meets the "objectively reasonable" test, immunity attaches. See, e.g., *Jeffers v. Heavrin*, 10 F.3d 380, 381 (6th Cir.1993); *Doe v. Sullivan County*, 956 F.2d 545, 554 (6th Cir.1992). The burden is on Mr. Mayo to show that Brossard was not entitled to qualified immunity. See *Wegener v. Covington*, 933 F.2d 390, 392 (6th Cir.1991).

The plaintiff contends incorrectly that he was not in violation of the PPO issued against him, and that Deputy Brossard acted unreasonably in arresting him. Although the box on the PPO prohibiting plaintiff from "[e]ntering onto the property where the petitioner lives" was not checked by the judge who issued it, he did check the box which prohibited the plaintiff from "[h]arassment which has become stalking as defined under M.C.L. 750.411h," and the boxes prohibiting the plaintiff from "approaching or confronting petitioner in a public place, or on private property" and "entering onto or remaining on property owned, leased or occupied by petitioner." Therefore plaintiff was in violation of the plain terms of the PPO. Deputy Brossard testified that he did believe that Mr. Mayo had engaged in harassment of Mrs. Mayo at that time. In response to the question of "Do you have any reason to believe that Mr. Mayo was harassing Mrs. Mayo on that date?", Deputy Brossard stated that, "I believe he was making her very upset. She was crying. She was scared for her life. If that's not harassing somebody, I need a better definition then." In response to the next question, "What is it that Mr. Mayo did that would have constituted harassment on this date?", Deputy Brossard testified that "I believe that taking into consideration his prior assault conviction in Roseville and what she must have lived through in Roseville with that prior domestic assault and her being afraid of her personal safety on that day with knowledge of the marital relationship, then only she would have had, I think she was in fear for her safety."

In addition, it appears that the trial judge in this case believed that the plaintiff's actual presence on Mrs. Mayo's property, or even a telephone call from him to her, would constitute harassment in light of past events. The judge there stated that the plaintiff could not call her, could not show up in front of her, and could not go onto the property. It was not unreasonable for Deputy Brossard to believe that harassment which had been stalking had occurred here. Mrs. Mayo was crying, there was a chair jammed up under the door, the plaintiff had been arrested for assault before, and there was a valid PPO against the plaintiff, which stated that he was "RESTRAINED FROM SHERRY LYNN MAYO." Deputy Brossard acted reasonably and is thus entitled to qualified immunity.

The plaintiff also complains that Macomb County did not adequately and properly train Deputy Brossard with regard to arrest procedures. In order to make out a claim against Macomb County, the plaintiff must show that the municipality's conscious policy regarding training and supervision amounts to deliberate indifference to constitutional rights. See *City of Canton v. Harris*, 489 U.S. 378, 387, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). It is not enough for Mr. Mayo to show that his injury could have been avoided if the officer had had more or better training. See *id.*; *Lewis v. City of Irvine, Kentucky*, 899 F.2d 451, 455 (6th Cir.1990). The simple fact that Macomb County did have a written policy as to when an officer can arrest a person without a warrant pursuant to a PPO, which specifically refers to, and mirrors the relevant statute, M.C.L. 764.15b, seems to obviate the plaintiff's argument. That a presentation on the subject matter was also made to the officers only further blunts the force of his claim. Thus, the plaintiff's claim against Macomb County must also fail.

Plaintiff's other claims have no merit. Plaintiff was understandably upset when he was arrested, but we can find no wrongdoing on the part of Deputy Brossard, or Macomb County, in this case. Deputy Brossard was required to make a quick judgment under difficult circumstances using only the information he had at his disposal at the time, and we are convinced that his conduct was proper.

**AFFIRMED.**