Antonio HALL and DeLisa Hall, Plaintiffs,

v.

TOWNSHIP OF MOUNT MORRIS, Jeff Iski, and James Gagliardi, Defendants.

No. 00–CV–72410–DT.

United States District Court, E.D. Michigan, Southern Division.

March 7, 2002.

Thomas W. Waun, Michael P. Parillo, Grand Blanc, MI, for plaintiffs.

G. Gus Morris, Cox, Hodgman, Giarmarco, Troy, MI, for defendants.

## MEMORANDUM OPINION AND ORDER

HOOD, District Judge.

### I. FACTS

Plaintiffs Antonio and DeLisa Hall filed this cause of action in the Circuit Court for the County of Genessee contending that the Defendants Mt. Morris Township, Officer Jeff Iski and Officer James Gagliardi violated their Civil Rights.

On April 19, 1998 at approximately 9:00 p.m., the Mt. Morris Township Police Department received a domestic dispute call in which Sally Ann Pettiford reported that her child's father had threatened to return to her home at 1228 W. Cass and shoot up the place. When the officers arrived at the residence and spoke with Ms. Pettiford, the suspect was gone. At approximately 1:30 p.m., the Officers received a second call that there was a family dispute at 1228 W. Cass.

When the Officers arrived at the Plaintiffs' home on the second call and exited their vehicle, Plaintiff Antonio Hall began to walk toward the officers. The officers noticed that Mr. Hall had an unidentifiable object in his hand. The officers told Mr. Hall to get his hands up. Mr. Hall was told to put his hands on the parked car and spread his legs. Officer Iski began to pat Mr. Hall down. It is alleged that Mr. Hall moved his leg and Officer Iski took his foot and kicked Mr. Hall's leg back into the spread eagle position. The moving of the leg back and forth caused Officer Iski to attempt to handcuff Mr. Hall. Mr. Hall resisted and he and the officers began wrestling. It is alleged that Officer Gagliardi began to hit Mr. Hall with an object. Mr. Hall dove into the squad car carrying Officer Iski with him. Officer Iski's arm was pinned behind Mr. Hall. In effort to free Officer Iski and to subdue Mr. Hall, Officer Gagliardi sprayed Mr. Hall with pepper spray. Officer Iski grabbed Mr. Hall by the neck and Mr. Hall bit Officer Iski's finger. Mr. Hall was eventually handcuffed and taken to the Mt. Morris Police Station.

Mr. Hall contends that as a result of Officers Iski's and Gagliardi's conduct he suffered physical injuries. Defendants removed this cause of action from the Circuit Court for the County of Genessee based upon a federal question. Plaintiffs allege in Count I, Violation of Civil Rights pursuant to 42 U.S.C. § 1983 and in Count II, assault and battery. On April 6, 2001, Defendants filed a motion for summary judgment. Plaintiffs filed a response. On April 11, 2001, Defendants filed a Motion to Strike Plaintiffs' Expert Witness.

## II. OFFICIAL CAPACITY/INDIVIDUAL CAPACITY

Defendants contend that Plaintiffs sued Officers Iski and Gagliardi in their official capacities only and therefore the Section 1983 claim must be evaluated under the standards which govern public entities. Defendants state that municipalities cannot be held responsible for a constitutional deprivation unless there is a direct casual link between a municipal policy or custom and the alleged constitutional deprivation. *Monell v. Dept. of Social Services of New York*, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). In addition, Defendants state that a single, isolated instance of excessive force cannot be used to establish an official policy held by the municipality. *Estate of Callahan v. City of Detroit*, 863 F.2d 47 (6th Cir.1988) citing *City of Oklahoma v. Tuttle*, 471 U.S. 808, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985).

Defendants assert that there is no evidence that Mt. Morris has a policy which requires the use of excessive force. Defendants attached as Exhibit E, the Township's policy against use of excessive force. Defendants also contend that the evidence does not support that the Defendant officers were inadequately trained. Exhibit C of Defendants' Brief contains the training records of both of the Defendant officers.

Plaintiffs contend that Defendants were sufficiently put on notice that they were being sued in their individual capacities. Plaintiffs note that Count 1 of the Complaint states that "Defendants Iski and Gagliardi used excessive force which was clearly excessive in light of the circum-

stances existing at the time of the arrest." (See Plaintiffs' Ex. G, ¶ 11). Plaintiffs also state in the Complaint that "Defendants Iski and Gagliardi used excessive force with the intent to inflict unnecessary harm upon the Plaintiffs and such use of force caused physical and mental injuries to the Plaintiff." (See Plaintiffs' Ex. G, ¶ 12). Plaintiffs complained that Defendants Iski and Gagliardi were acting under color of the authority of the Mt. Morris Township Police Department in violation in 42 U.S.C. § 1983. (Exhibit G, ¶¶ 13, 14 and 17).

Plaintiffs argue that the Defendant Officers acknowledged that they were being sued in their individual capacities as verified by Defendants' Affirmative Defenses which state:

1. That the individual defendants herein were at all times acting in the belief that their actions were lawful and within the bounds of the Constitution and objectively reasonable. Therefore, these defendants are entitled to qualified immunity.

\* \* \* \* \* \*

4. That the actions of the individual defendants were based on probable cause and therefore privileged.

Plaintiffs state that if this Court finds that the Defendants were not named individually, Plaintiffs seek leave to amend their complaint to name Defendants Iski and Gagliardi in their individual capacities.

Defendants state that Plaintiffs' Complaint is clearly defective. Defendants argue that the words "individual" or "individually" never appear in the Complaint. It is Defendants' contention that the Sixth Circuit requires a clear indication that § 1983 defendants are being sued in their individual capacities. Defendants state that Plaintiffs' Complaint is ambiguous. Defendants state that Plaintiffs have the burden of properly naming the Defendants, and the pleading of an affirmative defendant do not cure Plaintiffs' pleading

error. The pleading of an affirmative defense merely precludes its waiver. Defendants argue that Plaintiffs should not be permitted to file an amended complaint where they have not filed a motion for leave to amend.

It is Defendants' position that they believed that they were being sued in their official capacities only and therefore have not disposed of assets, placed any properties in the names of their spouses, or hired additional legal counsel. Defendants assert that they will be prejudiced by the exposure to an entirely new and greater liability.

The United States Supreme Court in *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993), reviewed whether a federal court could apply a heightened pleading standard than the usual pleading requirements of Rule 8(a) of the Federal Rules of Civil Procedure in civil rights cases alleging municipal liability under section 1983. The court determined that "[p]erhaps if Rules 8 and 9 were rewritten today, claims against municipalities under § 1983 might be subjected to the added specificity requirement of Rule 9(b)." *Id.* However, "[i]n the absence of such an amendment federal courts and litigants must rely on summary judgment and control of discovery to weed out unmeritorious claims sooner rather than later." *Id.* at 168–69, 113 S.Ct. 1160.

When Plaintiffs filed this cause of action, they failed to specify under which capacity, individual or official, Officers Iski and Gagliardi were sued. The Complaint merely identifies the officers as "Defendant, Jeff Iski, upon information and belief, is a resident of Genessee County, Michigan, and is employed as a police officer by the Defendant, Mt. Morris Township." (See Complaint, ¶ 3). Plaintiffs identify Officer Ga-

gliardi in a similar manner in Paragraph 4 of the Complaint. Plaintiffs later stated that "Plaintiff's arrest was made under color of the authority of Defendants Iski and Gagliardi, as police officers for Mt. Morris Township." (See Complaint, ¶ 17).

■■■ The Complaint seemingly refers to the Officers in their official capacity. Plaintiffs, however, have requested an opportunity to amend their Complaint if this Court finds that the Officers were named in their official capacity only. Federal Rules of Civil Procedure 15 governs amendments and supplemental pleadings. "A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served, ..." otherwise, a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires. Fed.R.Civ.P. 15(a). Leave to amend may be denied when it would result in undue delay, prejudice to the opposing party, or the repeated failure to cure deficiencies in the complaint. *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); *Duchon v. Cajon Co.*, 791 F.2d 43, 48 (6th Cir.1986). Delay by itself is not sufficient reason to deny a motion to amend. *Coe v. Bell*, 161 F.3d 320, 341 (6th Cir.1998). Notice and substantial prejudice to the opposing party are critical factors in determining whether an amendment should be granted. *Brooks v. Celeste*, 39 F.3d 125, 130 (6th Cir.1994). Whether a proposed amendment is futile rests on whether it could withstand a Rule 12(b)(6) motion to dismiss. *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir.2000). The granting or denial of leave to amend rests within the discretion of the district court. *Duchon*, 791 F.2d at 48.

Section 15(c) governs amendments which relate back to the original proceeding. An amendment of a pleading relates back to the date of the original pleading when (1) relation back is permitted by the law that provides the statute of limitations applicable to the action, or (2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, or (3) the amendment changes the party or the naming of the party against whom a claim is asserted if the foregoing provision (2) is satisfied and, within the period provided by Rule 4(m) for service of the summons and complaint, the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that but for a mistake concerning the identity of the proper party, the action would have been brought against the party. Fed.R.Civ.P. 15(c)(3).

■■■ Each conjunction connecting the three parts of Rule 15(c) says "or" and not "and." It is clear that Plaintiffs' amended pleading would arise out of the conduct, transaction or occurrence set forth in the original Complaint. Naming the officers in their individual capacities when they have already been named in their official capacity does not to this Court constitute a change in parties. The Defendants received notice of this cause of action on May 9, 2000 when they were personally served with a copy of the Summons and Complaint. Defendants argue that they will be prejudiced because of the possibility of having to pay damages from their personal assets. However, this Court finds that Defendant not only had notice but also should have known that but for a mistake concerning the identify of the proper party, the action would have been brought against them in an individual capacity. *Brown v. Shaner*, 172 F.3d 927, 933 (6th Cir.1999). The *Brown* Court stated:

Plaintiffs' Original Complaint did not speak in ... unequivocal terms; indeed while it named both individual defendants, it did not state the capacity in which they were being sued.... All of the defendants' wrongdoing related to their personal conduct.... Both [defendants] knew that they were being sued under section 1983 as early as April 10, 1996, when plaintiff filed their original Complaint in state court; to wit, they were the only defendants named in that pleading. Even if the specific capacity in which they were being sued was not clear until later, this was not a case where that temporary omission could have led defendants to believe that they could not be liable. Both men "received such notice of the institution of the action that" they were not prejudiced in maintaining a defense on the merits.

*Id.* at 933–34.

In *Lovelace v. O'Hara*, 985 F.2d 847 (6th Cir.1993), the Sixth Circuit held that the district court erred in allowing plaintiff to amend her complaint to sue in the individual capacity. The court stated that the original complaint expressly states that "O'Hara acted 'not as an individual,' but clearly within the expressed and implied powers of his capacity." *Id.* at 850. The statement expressed a clear intent to hold the state responsible for O'Hara's action. The court stated:

The majority in [*Hill v.*] *Shelander*[, 924 F.2d 1370 (7th Cir.1991)] discounts the prejudice to the defendant who suddenly finds his personal asserts in jeopardy long after the suit has been instituted against him in his official capacity. However, the Sixth Circuit has plainly recognized this prejudice by stating that "[i]t is not too much to ask that if a person or entity is to be subject to suit, the person or entity should be properly named and clearly notified of the potential for payment of damages individually." *Id.* at 851 (citing Wells v. Brown,

891 F.2d 591 (6th Cir.1989)). We base our conclusion here largely on this circuit's precedent.

Unlike the Defendants in *Lovelace*, the Defendants in the case at bar cannot rely upon an unequivocal statement of an intention to bring a cause of action against the officers in their individual capacity only. The Complaint is ambiguous. The officers received notice of the cause of action on May 9, 2000 when served a copy of the Summons and Complaint and should have been on notice of potential individual liability. However, for the reasons set forth below, amending the Complaint is futile.

## III. MOTION FOR SUMMARY JUDGMENT

### A. Standard of Review

Defendant Mt. Morris Township and Defendants Officers Iski and Gagliardi seek dismissal pursuant to Rule 56(c) of the Federal Rules of Civil Procedure for summary judgment. Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In determining whether there are issues of fact requiring a trial, the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus., Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962)). A "material" fact exists if there is a "dispute over facts that might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue is "genuine" if "the evidence is such

that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248, 106 S.Ct. 2505.

The moving party has the initial burden of showing there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Summary judgment must be entered if the nonmoving party fails to provide sufficient evidence on an essential element to that party's case on which that party will bear the burden of proof at trial. *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548. The nonmoving party must present more than a mere scintilla of evidence and "may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 249, 252, 106 S.Ct. 2505 (internal citation omitted). If the nonmoving party fails to present evidence that opposes the moving party, the evidence submitted by the moving party will be taken as true. *Id.* at 248–49, 106 S.Ct. 2505.

### B. Qualified Immunity

Defendants state that if this Court finds that the Defendants were sued in their individual capacities, the officers are entitled to qualified immunity. Defendants state that Plaintiffs are required to show:

Two essential elements must be pled and proven by a plaintiff to recover under § 1983. First, there must be a deprivation of plaintiff's "rights, privileges or immunities secured by the constitution and laws ..." of the United States [citations omitted]. Second, the plaintiff must alleged that the defendants deprived him of this constitutional right "under color of any statute, ordinance, regulation, custom or usage, of any state or territory." [citations omitted].

*Dunn v. State of Tennessee,* 697 F.2d 121, 125 (6th Cir.1982).

Government officials are entitled to qualified immunity where their actions do not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Greene v. Reeves,* 80 F.3d 1101, 1104 (6th Cir.1996) (*citing Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). Defendants will not be immune if, on an objective basis, it is obvious that no reasonably competent officers would have concluded that [the action at issue was lawful]; but if officers of reasonable competence could disagree on this issue, immunity should be recognized. *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986). Qualified immunity is an initial threshold question the court is required to rule on early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive. *Saucier v. Katz,* 533 U.S. 194, 121 S.Ct. 2151, 2156, 150 L.Ed.2d 272 (2001). Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). The privilege is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Id.*

The first inquiry to determine qualified immunity is, taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right. *Siegert v. Gilley,* 500 U.S. 226, 232, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991). If no constitutional right would have been violated, there is no necessity for further inquiries concerning qualified immunity. *Saucier,* 121 S.Ct. at 2156, 121 S.Ct. 2151. If a violation could be made out, the next step is to determine whether the right was

clearly established in light of the specific context of the case, not as a broad general proposition. *Id.*

Under the Fourth Amendment seizure approach which is utilized in the Sixth Circuit, excessive force is used if the police officer's actions were unreasonable. *Leber v. Smith*, 773 F.2d 101 (6th Cir. 1985). In order to determine whether the actions of the officers were unreasonable, the court must consider the factual circumstances surrounding the incident in question. *Id.* It has been established in this Circuit that a citizen has a right to be free from excessive police force and any reasonable police officer should have known that. *Martin v. Heideman*, 106 F.3d 1308, 1312–13 (6th Cir.1997). In an excessive force claim, whether Defendant officers are entitled to qualified immunity in a particular case depends on whether the officer's actions, in light of the totality of the circumstances were objectively reasonable. *Graham v. Connor*, 490 U.S. 386, 397, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). In determining whether an officer's actions were reasonable, the specific facts of each case are key. *Id.* at 396, 109 S.Ct. 1865. Courts should pay particular attention to "the severity of the crime at issue, whether the suspect poses immediate threat to the safety of the officers or other, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* While courts must look to the totality of the circumstances in determining whether a seizure was reasonable, they must be sure to view those facts "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* The officer's underlying intent or motivation, good or evil, is not taken into consideration. See *Scott v. United States*, 436 U.S. 128, 137–39, 98 S.Ct. 1717, 56 L.Ed.2d 168 (1978). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judg-ments-in circumstances that are tense, uncertain, and rapidly evolving-about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396–97, 109 S.Ct. 1865. "[O]ur Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Id.* at 396, 109 S.Ct. 1865. "Excessive force claims, like most other Fourth Amendment issues, are evaluated for objective reasonableness based upon the information the officers had when the conduct occurred." *Saucier*, 121 S.Ct. at 2159. The Fourth Amendment is not violated by an arrest based on probable cause, even though the wrong person is arrested. *Hill v. California*, 401 U.S. 797, 91 S.Ct. 1106, 28 L.Ed.2d 484 (1971). Nor by the mistaken execution of a valid search warrant on the wrong premises. *Maryland v. Garrison*, 480 U.S. 79, 107 S.Ct. 1013, 94 L.Ed.2d 72 (1987). An officer might correctly perceive all of the relevant facts but have a mistaken understanding as to whether a particular amount of force is legal in certain circumstances. If the officer's mistake as to what the law requires is reasonable, the officer is entitled to the immunity defense. *Saucier*, 121 S.Ct. at 2158. The immunity inquiry acknowledges that reasonable mistakes can be made as to the legal constraints on particular police conduct. *Id.*

The Defendant Officers were responding to what they reasonably believed was a person who was earlier involved in an altercation where the use of a gun was threatened. Defendants state that upon arrival at 1228 W. Cass, Plaintiff came at them in an aggressive manner and concealed in his hand an unknown object. Plaintiff Antonio Hall had clearly consumed alcohol. When the Defendant Officers attempted to pat down Mr. Hall, Mr.

Hall kicked the officer. After cuffing one hand, Mr. Hall turned and began to wrestle with the officers. The officers hit Mr. Hall in the head and Mr. Hall dove into the squad car. Mr. Hall continued to wrestle with the officers pinning the arm of Officer Iski. When one of the officers attempted to pepper spray Mr. Hall, Mr. Hall bit one of the officers. After which Mr. Hall stated in his deposition that he then let the officers handcuff him. Defendants state that the Mr. Hall told his wife, DeLisa Hall, that the officers did not do anything to him. Defendants assert that considering the totality of circumstances, officers could disagree on whether the force was excessive such that the Defendant officers are entitled to qualified immunity.

Plaintiffs state that the inadequate training of Defendants Iski and Gagliardi in responding to domestic violence calls led to the deprivation of the constitutional rights of Plaintiff Antonio Hall. Plaintiffs contend that the Defendant Officers failed to investigate the alleged problem. Plaintiffs stated that the Officers never talked to Sally Anna Pettiford, Plaintiff DeLisa Hall's daughter, who made the first phone call regarding domestic violence. Plaintiffs state that the Officers assumed that the first and second call of a family dispute were related. The Officers never attempted to identify Plaintiff Antonio Hall.

Plaintiffs rely on MCLA § 776.22 which sets forth the procedures for making a criminal arrest when dealing with a domestic violence call. Section 776.22(ii) states that an officer must first have probable cause to believe that the persons involved in the domestic dispute must have committed a crime against each other prior to arrest. Plaintiffs assert that the Defendants failed to follow the mandate of MCLA § 776.22. Plaintiffs state that Mt. Morris Township's failure to properly train its officers in dealing with domestic vio-

lence was the cause of the constitutional deprivation suffered by Plaintiff Antonio Hall. Plaintiffs stated their expert witness, Fred Postill, will testify that it is necessary that officers responding to a domestic call speak to someone to establish that they are arresting the right person.

Defendants reply that Defendant Iski was trained in domestic violence on February 21, 1997 as shown by Defendants' Exhibit F. Defendants assert that Officer Iski brought back the materials from the course and shared the material with the members of the Mt. Morris Township Police Department which included Officer Gagliardi.

Viewing the facts in the totality of the circumstances, this Court finds that the force used by Officers Iski and Gagliardi was not unreasonable. On the night in question, the Defendant Officers had received a call regarding a male threatening to shoot Sally Ann Pettiford. Ms. Pettiford told the Officers that her child's father threatened to kill her. The Defendant Officers later that night received a call regarding a family argument at the same 1228 W. Cass address. When the Officers arrived on the scene, they observed Antonio Hall walking toward them with an unidentified object his hand. "Mr. Hall was given a verbal command to show [the officers] his hands as he [continued] to approach the [police vehicle]." (See Officer Gagliardi's Dep., p. 13). Once the Officers determined that Mr. Hall had a set a keys in his hand, "Officer Iski attempted to pat down Mr. Hall's upper torso area, his waist area, up under the arms. . . . After that he [Officer Iski] attempted to pat down his [Plaintiff] lower torso, ankle area, inner thigh area. Officer Iski requested that Mr. Hall spread his legs. He would not put a wide enough gap between his feet. Mr. Hall refused that

request." (See Officer Gagliardi's Dep., p. 17).

Mr. Hall's own deposition indicates that he was attempting to resist and evade the Officers. Mr. Hall stated in deposition that "[a]fter he [Officer Iski] began to pat me down and he snatched my leg, my right leg to spread it further out." (See Antonio Hall's Dep., p 53). *"And I moved my leg a little bit going inward and he kept snatching on me and I told him that he didn't have to keep snatching on me."Id.* (italics added). Mr. Hall stated that at that point Officer Iski began to put cuffs on him. *Id.* at 53. Mr. Hall asked Officer Iski, "why was he being arrested?" Mr. Hall stated that Officer Iski stomped his foot and Mr. Hall and the Officer began wrestling. *Id.* at 53—54 Mr. Hall testified that when the officer had put one handcuff on his left hand that is when Mr. Hall turned around and the wrestling began. *Id.* at 54. Mr. Hall testified that he was struck with an object in the head and face. *Id.* at 55. Mr. Hall stated that he then dove into the police car where he was pepper sprayed but the officer had missed him. *Id.* at 56. When the officer tried to grab Mr. Hall, he bit the fingers of the officer. *Id.* at 56

The Officers were called to the scene of a family argument for the second time where threats of shooting had been made. When they arrived at the location, an unidentified male approached the vehicle with an unknown object in his hands. The Officers demanded that he show his hands. When the Officers determined that the male only had keys in his hand, the man was told to place his hands on the hood of the car and spread his legs. The Officers attempted to pat down the man but the man refused to stay in the requested position causing the Officers to position him. When the Officers were unable to complete the pat down, the Officers attempted to handcuff the man. The man began to wrestle with the Officers when they at-tempted to handcuff him. Mr. Hall there-after dove into the police car where the Officers attempted to pepper spray him and missed.

 Even if the Officers failed to inquire as to the identity of the man approaching them, given the fact that this was the second call at that location in one night, the Officers did not have the time to make such an inquiry. Any mistake in failing to inquire the identity of the man approaching them was reasonable, in light of the fact that Mr. Hall approached them aggressively. The Fourth Amendment is not implicated even though the wrong person is arrested. See *Hill, supra.* The Officers apparently used some force in an effort to subdue Mr. Hall. The Officers' belief that some level of force was required was reasonable judged from the Officers' on-scene perspective. Based on the totality of the circumstances, the officers' actions were reasonable and they are entitled to qualified immunity.

## C. Inadequate Training

 Plaintiffs also allege that the Mt. Morris Police Department failed to adequately train its officers in the area of domestic abuse. In order for a municipality to be liable, a plaintiff must show that the defendant's objectionable actions were made pursuant to an official city policy or custom. *Monell v. Department of Social Services,* 436 U.S. 658, 691–94, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). A municipality cannot be held liable under Section 1983 on a theory of respondeat superior for alleged torts of its employees. *Id.; Oklahoma City v. Tuttle,* 471 U.S. 808, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985). The deprivations arising from the decisions of its duly constituted legislative body or of those officials whose acts must fairly be said to be those of the [municipality]. *Id.* A municipality may be held liable under

Section 1983 only when an employee tortfeasor is acting under color of an official policy and the policy is the moving force behind the alleged constitutional violation. *City of Canton v. Harris*, 489 U.S. 378, 387, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). A plaintiff must "identify the policy, connect the policy to the city itself, and show that the particular injury was incurred because of the execution of that policy." *Garner v. Memphis Police Dep't*, 8 F.3d 358, 367 (6th Cir.1993). Furthermore, a municipality may not be held liable under Section 1983 unless the plaintiff proves the existence of an unconstitutional policy promulgated by officials having final policy-making authority. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 128, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988).

▇ Although § 1983 does not allow municipalities to be sued under a theory of *respondeat superior*, a failure to train is a cognizable claim if "the failure to train amounts to deliberate indifference to the rights of the person with whom the police come into contact." *Harris*, 489 U.S. at 388, 109 S.Ct. 1197; *see also Febus–Rodriguez v. Betancourt–Lebron*, 14 F.3d 87, 93 (1st Cir.1994). The municipality's policy must be the "moving force [behind] the constitutional violation." *Harris*, 489 U.S. at 388, 109 S.Ct. 1197 (citing *Monell*, 436 U.S. at 694, 98 S.Ct. 2018 and *Polk County v. Dodson*, 454 U.S. 312, 326, 102 S.Ct. 445, 70 L.Ed.2d 509(1981)). The Supreme Court opined:

> Only where a municipality's failure to train its employees in a relevant respect evidences a "deliberate indifference" to the rights of its inhabitants can such a shortcoming be properly thought of as a city "policy or custom" that is actionable under § 1983.... "[M]unicipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among

various alternatives" by city policymakers.

*Id.* (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 483–484, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986) and citing *Oklahoma City v. Tuttle*, 471 U.S. at 823, 105 S.Ct. 2427).

A failure to train may happen in light of the duties assigned to specific officers or employee if the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers were deliberately indifferent to the need. In that event, the failure to properly train may be fairly said to represent a policy for which the city is responsible and for which the city may be held liable if it actually causes injury. *Harris*, 489 U.S. at 388, 109 S.Ct. 1197.

Defendants have attached exhibits which show that Officer Iski was trained and assert that the same materials were utilized in training Officer Gagliardi although no documentation was attached. Plaintiffs state that the officers failed to investigate the problem before arresting Antonio Hall. Officers Iski and Gagliardi were not able to investigate the call because Mr. Hall refused to cooperate with their efforts to secure the scene. Such does not evidence a lack of training. Plaintiffs have failed to detail to the Court how the Officers' training was deficient. Plaintiffs have not shown that there was an obvious need for more or different training.

In *Mayo v. Macomb County*, 183 F.3d 554 (6th Cir.1999), the court stated that it was not enough that the plaintiff show that his injury could have been avoided if the officer had more or better training. Macomb County did have a written policy as to when an officer could arrest a person without a warrant pursuant to a personal protection order ("PPO") which specifically refers to, and mirrors the relevant statute,

M.C.L. § 764.15b. The court stated that the officers were required to make a quick judgment under difficult circumstances using only the information he had at his disposal at the time. *Id.* at 555.

 This Court is uncertain whether the Defendant municipality has a policy which mirrors MCLA § 776.22. However, this Court finds that the Officers were trained in domestic violence, and that the Officers were never able to secure the scene to follow the procedures of MCLA § 776.22. Such does not evidence a failure to train by Mt. Morris Township. Defendant Mt. Morris Township is dismissed from this suit.

## D. Governmental Immunity

Defendants argue that they are entitled to governmental immunity on Plaintiffs' state law claim of assault and battery. Defendants assert that they are entitled to governmental immunity pursuant to MCLA § 691.1407(2) which provides:

Except as otherwise provided in this section and without regard to the discretionary or ministerial nature of the conduct in question, each officer and employee of a governmental agency ... shall be immune from tort liability for injuries to persons or damages to property caused by the officer employee or member while in the course of employment or service ... on behalf of a governmental agency if all of the following are met:

 a. the officer ... reasonably believes he or she is acting within the scope of his or her authority;

 b. the governmental agency is engaged in ... of a governmental function;

 c. the officer's ... conduct does not amount to gross negligence that is the proximate cause of the injury or damage. As used in this subdivision, "gross negligence" means conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results.

Defendants state that there is no intentional tort exception to governmental immunity. *Smith v. Dept. of Public,* 428 Mich. 540, 544, 410 N.W.2d 749 (1987). Intentional torts are assessed on the basis of the conduct complained of under the "gross negligence" standard. Defendants contend that a government actor is immune as long as he or she reasonably believes that he or she is acting within the scope of his or her authority and the facts do not evidence "conduct so reckless as to demonstrate a substantial lack of concern for whether injury results."

Defendants stated that there is nothing in the record to suggest that Officers Iski or Gagliardi acted outside of the scope of their authority when they arrested Mr. Hall. Defendants stated that Mr. Hall struggled with the officers while resisting and evading arrest. Plaintiffs have not shown that the officers' actions were grossly negligent.

Plaintiffs state that it is clear that "an individual employee's intentional torts are not shielded by Michigan governmental immunity statute." *Sudul v. City of Hamtramck,* 221 Mich.App. 455, 458, 562 N.W.2d 478 (1997). Plaintiffs argue that where a police officer assaulted, battered and used excessive force against a person, the officer does not enjoy common law freedom or immunity from tort liability. *Blackman v. Cooper,* 89 Mich.App. 639, 643, 280 N.W.2d 620 (1979).

 The Michigan Governmental Immunity statute states that "Subsection (2) shall not be construed as altering the law of intentional torts." MCLA § 691.1407(3). A battery occurs when there is a willful, harmful or offensive touching of the plaintiff. *Clarke v. K–Mart Corp.,* 197 Mich.App. 541, 495

**920**

N.W.2d 820, 824 (1992). Assault and battery is the willful touching of the person of another by the aggressor. *Tinkler v. Richter*, 295 Mich. 396, 295 N.W. 201 (1940). A police officer may use reasonable force when making an arrest. *Anderson v. Antal*, 191 F.3d 451 (6th Cir. 1999). The measure of necessary force is that which an ordinary prudent and intelligent person with the knowledge and in the situation of the arresting officer would have deemed necessary. *Id.* Michigan courts have recognized that "[w]hether officers hypothetically could have used less painful, less injurious, or more effective force is executing an arrest is simply not the issue." *People v. Hanna*, 223 Mich. App. 466, 567 N.W.2d 12, 16 (1997).

■ For the same reasons that the Officers' actions were objectively reasonable for the purposes of the governmental immunity analysis above, the actions are reasonable for the purposes of a state law claim for assault and battery. *Anderson*, 191 F.3d 451. Defendants are entitled to governmental immunity as to Plaintiffs' state law tort claim of assault and battery.

### IV. MOTION TO STRIKE PLAINTIFFS' EXPERT WITNESS

This motion is moot given that the Court has granted Defendants' Motion for Summary Judgment.

### V. CONCLUSION

For the reasons set forth above,

IT IS ORDERED that Defendants' Motion for Summary Judgment (**Docket No. 28, filed April 6, 2001**) is GRANTED.

IT IS FURTHER ORDERED that Defendants' Motion to Strike Witness List (**Docket No. 29, filed April 11, 2001**) is MOOT.

IT IS FURTHER ORDERED that this matter is DISMISSED with prejudice.