Samuel L. LEWIN, et al., Plaintiffs,

v.

AMERICAN EXPORT LINES,
INC., et al., Defendants.

Willard E. Bartel, Administrator of the
Estate of Samuel L. Lewin, et al.,
Plaintiffs,

v.

Foster Wheeler Company,
et al., Defendants.

Nos. 1:93CV10601, 1:93CV10602.

United States District Court,
N.D. Ohio,
Eastern Division.

Aug. 4, 2004.

Donald A. Krispin, Maritime Asbestos Legal Clinic, Division of Jaques Admiralty, Detroit, MI, for Samuel L. Lewin.

Byron J. Horn, Harold W. Henderson, Richard C. Binzley, Frank R. DeSantis, Thompson Hine, LLP, Cleveland, OH, Pamela Zarlingo, Thompson, Hine & Flory, Cleveland, OH, Gene B. George, Julia R. Brouhard, David G. Davies, William D. Carle, III, Ray, Robinson, Carle & Davies, Cleveland,

OH, Andrew Constantine, II, Maron, Marvel & Constantine, LLC, Jersey City, NJ, Wayne A. Marvel, Maron & Marvel, PA, Wilmington, DE, Hal M. Hirsh, New York City, Matthew C. O'Connell, Sutter, O'Connell, Christina Tuggey Hidek, Mannion & Farchi, Cleveland, OH, Michael C. Cohan, Cavitch, Familo, Durkin & Frutkin, Cleveland, OH, Pauline Franklin, Toledo, OH, for Defendants.

## MEMORANDUM OPINION

DOWD, District Judge.

### I. Introduction

The above-captioned matters are before the Court on a Motion to Compel Answers to Interrogatories and Responses to Requests for Production of Documents filed by Defendants, American Export Lines, Inc. (n.k.a. Farrell Lines, Inc.), Baldbutte Shipping Co., Hess, Inc. (n.k.a. Amerada Hess Corp.), Keystone Shipping Company, Marine Transport Lines, Inc., Maritime Oversea Corporation (n.k.a OSG Ship Management, Inc.) and Montpelier Tanker Company (collectively "the Shipowner Defendants"[1]). (Doc. No. 225, Case No. 1:93CV10601; Doc. No. 140, Case No. 1:93CV10602.) Plaintiffs, Samuel L. Lewin and Willard E. Bartel, Administrator of the Estate of Samuel L. Lewin, responded to the Shipowner Defendants' Motion, (Doc. No. 229, Case No. 1:93CV10601; Doc. No. 143, Case No. 1:93CV10602) and the Shipowner Defendants replied (Doc. No. 235, Case No. 1:93CV10601; Doc. No. 148, Case No. 1:93CV10602).

Additionally, Plaintiffs' have filed a Motion to Consolidate and for Leave to File an Amended Complaint. (Doc. No. 243, Case No. 1:93CV10601; Doc. No. 155, Case No. 1:93CV10602.) All of the Shipowner Defendants, including American Oil Co. and Amoco Shipping Co.[2], as well as the one remaining Manufacturer Defendant, Garlock Sealing Technology L.L.C., opposed Plaintiffs' Motion. (Doc. Nos. 253, 254, 255, Case No.

1:93CV10601; Doc. Nos. 164, 165, Case No. 1:93CV10602.) Plaintiffs never responded.

One of the most highly disputed issues in multi-defendant asbestos litigation in this District is the extent to which amounts received in settlement with one defendant should affect the judgment liability of another nonsettling defendant. This legal issue was raised but not resolved in two maritime cases before Judge Patricia A. Gaughan: *Bartel v. Foster Wheeler Co.*, No. 1:94CV12030, (N.D. Ohio filed July, 20, 1994) and *Bartel et al v. A.H. Bull S.S. Co.*, No. 1:00CV11806 (N.D. Ohio filed July 14, 2000). The Shipowner Defendants' Motion to Compel has raised the question of how their liability should be calculated in this case considering that Plaintiffs have received compensation from settling defendants and bankruptcy trusts for the same asbestos-type injury to Lewin for which Plaintiffs now seek further compensation. In their Motion to Compel, the Shipowner Defendants contended that the nonsettling defendant's liability should be calculated according to the "proportionate share" approach announced by the Supreme Court in *McDermott, Inc. v. AmClyde*, 511 U.S. 202, 114 S.Ct. 1461, 128 L.Ed.2d 148 (1994). In response, Plaintiffs did not dispute the general applicability of the "proportionate share" approach. Instead, they argued that the "proportionate share" approach did not eliminate joint and several liability.

The Court scheduled a hearing to give counsel an opportunity to argue the prevailing issue. Shortly before the hearing, Plaintiffs filed a Sur–Reply changing their legal position. In the Sur–Reply, Plaintiffs asserted that the Shipowner Defendants are not entitled to "any apportionment of liability ..." citing the Jones Act, 46 U.S.C.App. § 688 and *Norfolk & Western Railway Co. v. Ayers*, 538 U.S. 135, 123 S.Ct. 1210, 155 L.Ed.2d 261 (2003). (Pls.' Sur–Reply at 1; Doc. No. 237, Case No. 1:93CV10601; Doc.

---

1. The Shipowner Defendants are owners of the vessels that Plaintiff, Samuel L. Lewin, worked on as a merchant mariner. The term "Manufacturer Defendant" refers to Defendants that manufactured the asbestos products on the vessels on which Lewin worked.

2. Counsel for American Oil Co. and Amoco Shipping Co. are hereby reminded to file documents in both Case Nos. 1:93CV10601 and 1:93CV10602.

No. 149, Case No. 1:93CV10602.) The Court heard argument on the apportionment issue for almost two hours. Now, the Shipowner Defendants have responded to Plaintiffs' Sur–Reply (Doc. No. 247, Case No. 1:93CV10601; Doc. No. 159, Case No. 1:93CV10602) and both parties have filed proposed jury interrogatories consistent with the theories advanced in their briefs. (Doc. Nos. 246, 248, Case No. 1:93CV10601; Doc. Nos. 158, 160, Case No. 1:93CV10602).

The Court will address the apportionment issue before turning to the Shipowner Defendants' Motion to Compel and Plaintiffs' Motion to Consolidate and for Leave to File an Amended Complaint.

## II. Analysis

### A. McDermott v. AmClyde

Again, the Shipowner Defendants contend that their liability should be determined applying the "proportionate share" approach. In opposition, Plaintiffs argue that the Shipowner Defendants are not entitled to any apportionment of damages. To support their argument, the Shipowner Defendants rely almost exclusively on *McDermott*. In *McDermott*, the petitioner McDermott purchased a heavy lift crane from respondent AmClyde for use in its operations in the Gulf of Mexico. The first time McDermott used the crane, the crane's main hook broke, causing extensive damage to both the crane and the platform. Based upon metallurgical and mechanical analysis of the failed hook, as well as other evidence, McDermott concluded that the hook was defectively manufactured and was the primary cause of the accident. AmClyde denied this allegation and instead laid blame for the accident upon improper linkages in the cables used.

McDermott brought suit against AmClyde, the crane's designer and manufacturer; River Don Castings, Ltd. ("River Don"), the hook's manufacturer; and three other companies (the "sling defendants") which supplied the steel slings used in conjunction with the crane. McDermott sought recovery for damages sustained to both the crane and the platform. On the eve of trial, McDermott settled with the sling defendants, releasing them from all liability in exchange for $1 million. Furthermore, McDermott assumed responsibility for all fault attributable to the sling defendants. At trial, a judgment in favor of McDermott was returned awarding $2.1 million for damages to the platform. Responding to special interrogatories, the jury affixed the relative responsibility of AmClyde and River Don for the accident at 32% and 38%, respectively. The remaining 30% of responsibility was attributed to McDermott and the sling defendants jointly. The trial court entered judgment as follows: $672,000 (32% of $2.1 million) against AmClyde, and $798,000 (38% of $2.1 million) against River Don.

Rejecting the *pro tanto* method of accounting for settlement amounts, the court refused to first reduce the $2.1 million award by the $1 million settlement before determining the respective liabilities of the nonsettling defendants (AmClyde and River Don). Despite the fact that the sum of the judgments entered ($672,000 + $798,000 = $1.47 million) and the settlement amount ($1 million) exceeded the jury's total award by $370,000, the trial court concluded that McDermott had not received a double recovery. As noted by the court, the settlement amount covered damages to both the crane and the platform, whereas the jury's award related solely to the platform damages. In addition, the court reasoned that any *pro tanto* reduction of the judgment would be unjust since those defendants found 70% liable (AmClyde and River Don) would pay a mere $470,000 ($1.47 million less $1 million), while the sling defendants who were found jointly liable with McDermott for 30% had previously paid $1 million.

On appeal, the Fifth Circuit held AmClyde harmless with respect to any recovery by virtue of a limited liability provision contained within the original sales contract. Furthermore, it found the trial court erred in refusing to credit the settlement amount against the judgment *pro tanto*. Recoverable damages were recalculated by first reducing the original award of $2.1 million by that proportion of fault attributable to McDermott and the sling defendants (30%), leaving a balance of $1.47 million. Next, the $1

million settlement was applied *pro tanto*, yielding a net recovery of $470,000, for which River Don remained solely liable.

The Supreme Court granted *certiorari* citing diverging methodologies among the circuits in accounting for settlements and their impact upon the ultimate liabilities of nonsettling defendants in admiralty cases. The Court considered three alternative approaches set forth in the Restatement (Second) of Torts: the *pro tanto* setoff with right of contribution; the *pro tanto* setoff without the right of contribution; and the "proportionate share" approach. After careful consideration of the relative strengths and weaknesses of each, the Court rejected the *pro tanto* methods of the first two alternatives and formally adopted the third alternative, the "proportionate share" approach. The "proportionate share" approach dictates that "the money paid extinguishes any claim that the injured party has against the released tortfeasor and also diminishes the claim that the injured party has against the other tortfeasors by the amount of the equitable share of the obligation of the released tortfeasor." *McDermott*, 511 U.S. at 209, 114 S.Ct. 1461. The Court reasoned that the "proportionate share" approach was more equitable that the *pro tanto* approaches and more consistent with a prior Supreme Court case adopting a "proportionate fault" analysis, *United States v. Reliable Transfer Co.*, 421 U.S. 397, 409, 95 S.Ct. 1708, 44 L.Ed.2d 251 (1975) ("*Reliable Transfer*").

### B. Norfolk & Western Railway Co. v. Ayers

Plaintiffs rely almost exclusively on *Ayers* to support their argument that the Shipowner Defendants are not entitled to apportionment. Under the Jones Act, "any seaman [that] suffer[s] personal injury in the course of his employment may ... maintain an action for damages" under the Federal Employers' Liability Act ("FELA"), 45 U.S.C. §§ 51–60, an old federal law that governs employee suits against railroads. 46 U.S.C.App. § 688. Section 1 of FELA provides that:

Every common carrier by railroad while engaging in [interstate commerce], shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce ... for such injury ... resulting in whole or in part from the negligence of .... such carrier ..."

45 U.S.C. § 51.

In *Ayers*, six plaintiffs suffering from asbestosis brought an action under FELA against Norfolk, their former employer. The asbestosis claimants alleged that Norfolk negligently exposed them to asbestos which caused them to come down with the occupational disease. The Supreme Court was asked to decide whether a railroad is subject to joint and several liability with contribution rights or whether an employee's significant exposure to asbestos while working for another employer justified apportionment of damages between Norfolk and the other employer. The Court held that FELA does not mandate apportionment. Interpreting section 1 of FELA, the Court found no "textual warrant" or precedent for apportionment of damages based on a third party's partial contribution to the injury, noting that such apportionment would be inconsistent with FELA's overall aim to facilitate recovery. *Ayers*, 538 U.S. at 159–65, 123 S.Ct. 1210. Instead, the Court found that traditional joint and several liability was the rule. *Id.* at 163, 123 S.Ct. 1210. *Ayers* is better known for the Court's holding that railroad workers that develop asbestosis can recover for their fear of being stricken with asbestos-related cancer in future. *Id.* at 145–50, 123 S.Ct. 1210.

### C. Applicable Case Law

■ This Court finds that *McDermott* is more appropriately applied to this matter than is *Ayers*. First, *McDermott* speaks to the prevailing issue more specifically. In *Ayers*, the Court only addressed whether the employer would have the benefit of having damages apportioned among it and other nonsettling defendants. *Ayers* did not address the issue before this Court, the effect of a settlement on nonsettling defendants. In fact, as the Shipowner Defendants point out "[t]he only mention of settlement in *Ayers* occur[ed] in the Court's recitation of the procedural history ..." (Defs.' Sur–Reply at

3.) In contrast, *McDermott* specifically addresses the question of how nonsettling defendants are to receive credit for settlements by joint tortfeasors.

Plaintiffs argue that because this is a "Jones Act case," the decision in *Ayers* is controlling. However, the present action is not just a "Jones Act case." Plaintiffs assert claims under general admiralty and maritime law in addition to the Jones Act.[3] As Plaintiffs have asserted more than one cause of action, this case is better characterized as an "admiralty case" rather than simply a "Jones Act case." *See, e.g., American Dredging Co. v. Miller*, 510 U.S. 443, 445–460, 114 S.Ct. 981, 127 L.Ed.2d 285 (1994) (describing the action as an "admiralty case" where an injured seaman sought relief under the Jones Act and general maritime law); *Perkins v. Am. Elec. Power Fuel Supply, Inc.*, 91 Fed. Appx. 370, 372, (6th Cir.2004) ("This [is an] *admiralty case*, in which the plaintiff alleged negligence under the Jones Act and unseaworthiness under general maritime law ..."); *Vandekreeke v. USS Great Lakes Fleet, Inc.*, 172 F.Supp.2d. 907, 909 (E.D.Mich.2001) (describing the matter as an "admiralty case" where injured seaman alleged causes of action under the Jones Act and general maritime common law). Clearly, *McDermott* applies to "admiralty cases." *McDermott*, 511 U.S. 202, 114 S.Ct. 1461.

For the foregoing reasons, the Court will apply *McDermott* to the present matter.

### III. Reasonableness

In *McDermott*, the Supreme Court sought to fashion a result that was consistent with its previous decision in *Reliable Transfer*. Before *Reliable Transfer*, when two or more parties caused property damage in a maritime collision or stranding, liability for such damages was allocated equally among the parties at fault. This was called the "divided damages" rule. The Court abandoned the "divided damages" rule in *Reliable Transfer* and adopted a proportionate fault rule whereby liability for damages is allocated among the parties proportionately to their comparative degree of fault.

■ Importantly, in the penultimate sentence of the *Reliable Transfer* opinion, the Court stated "liability for ... damages is to be allocated equally only when the parties are equally at fault or *when it is not possible fairly to measure the comparative degree of their fault.*" *Reliable Transfer*, 421 U.S. at 411, 95 S.Ct. 1708 (emphasis added). In *McDermott*, the Supreme Court explained its decision in *Reliable Transfer* as follows:

> We replaced the divided damages rule, which required an equal division of property damage whatever the relative degree of fault may have been, with a rule requiring that damages be assessed on the basis of proportionate fault when such an *allocation can reasonably be made.*

*McDermott*, 511 U.S. at 207, 114 S.Ct. 1461 (emphasis added). What is clear from *Reliable Transfer* and the Supreme Court's explanation of its prior decision in *McDermott* is that a court may chose not to assess damages on the basis of proportionate fault where apportionment of fault among the parties cannot "reasonably be made." *McDermott*, 511 U.S. at 207, 114 S.Ct. 1461; *Reliable Transfer*, 421 U.S. at 411, 95 S.Ct. 1708. The Court finds that in multi-defendant maritime asbestos cases, such as the case at bar, application of the "proportionate share" approach set forth in *McDermott* is unreasonable.

■ Resolution of asbestos maritime litigation has caused unique problems for federal courts. In *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 597, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997), the Supreme Court discussed the evolution of the Judicial Panel of Multidistrict Litigation[4] (the "MDL Panel") in response to what the Court coined "an asbestos litigation crisis." The Court quoted the following two paragraphs from a Report of the Judicial Conference Ad Hoc Committee on Asbestos Litigation describing common problems in asbestos litigation:

---

**3.** Plaintiffs also assert negligence and product liability claims against the Manufacturer Defendants.

**4.** All asbestos cases filed at the time the MDL Panel was formed were consolidated in the United States District Court for the Eastern District of Pennsylvania for pretrial proceedings.

This is a tale of danger known in the 1930s, exposure inflicted upon millions of Americans in the 1940s and 1950s, injuries that began to take their toll in the 1960s, and a flood of lawsuits beginning in the 1970s. On the basis of past and current filing data, and because of a latency period that may last as long as 40 years for some asbestos related diseases, a continuing stream of claims can be expected. The final toll of asbestos related injuries is unknown. Predictions have been made of 200,000 asbestos disease deaths before the year 2000 and as many as 265,000 by the year 2015.

The most objectionable aspects of asbestos litigation can be briefly summarized: dockets in both federal and state courts continue to grow; long delays are routine; trials are too long; the same issues are litigated over and over; transaction costs exceed the victims' recovery by nearly two to one; exhaustion of assets threatens and distorts the process; and future claimants may lose altogether.

*Id.* at 598, 117 S.Ct. 2231 (citing Report of The Judicial Conference Ad Hoc Committee on Asbestos Litigation 2–3 (Mar.1991)). When the present actions were filed in 1993, Plaintiffs' Complaints named thirty-two (32) Shipowner Defendants (Pl. Comp. at 1, Case No. 1:93CV10601) and twenty-six (26) Manufacturer Defendants. (Pl. Comp. at 1, Case No. 1:93CV10602). Presently, on the eve of trial, there still remain ten (10) Shipowner Defendants and one (1) Manufacturer Defendant. Some of the original Defendants have settled with Plaintiffs but many have been voluntarily dismissed. The Shipowner Defendants contend that even the voluntarily dismissed Defendants should be considered "settling defendants" for the purpose of *McDermott.* The Court need not address this issue. Because even with the eleven (11) Defendants remaining in the action and Defendants who actually signed settlements agreements with Plaintiffs, attempting to determine liability and the proportionate fault of these Defendants would "present intractable problems of trial management." *Am-*

*chem Products,* 521 U.S. 591, 117 S.Ct. 2231. Hence, the Court will not apply the "proportionate share" approach in this case.

## IV. Joint and Several Liability with *Pro Tanto* Setoff

█ The Court finds that in multi-defendant maritime asbestos cases such as the present, the applicable approach is joint and several liability with *pro tanto* set off.[5] Thus, Plaintiffs can recover the total amount of any judgment in this matter against any Defendant that is found liable for Lewin's alleged injuries. *See* Uniform Comparative Fault Act § 2, Comment "Joint and Several Liability and Equitable Shares of the Obligation," 12 U.L.A. 51 (1993 Supp.). The Court will not apportion the liability of each Defendant. If a Defendant believes that it has paid more than its equitable share of damages it can seek contribution from a joint tortfeasor in ancillary litigation. The Court is well aware that one reason the Supreme Court favored the "proportionate share" approach over the *pro tanto* with contribution approach in *McDermott* was due to the Court's view that contribution "burdens the courts with additional litigation." *McDermott,* 511 U.S. at 212, 114 S.Ct. 1461. Nonetheless, in maritime asbestos cases, any extra burden on the courts caused by a joint tortfeasor seeking contribution in ancillary litigation is outweighed by a court's interest in conducting a trial in the underlying asbestos litigation that is both manageable and efficient.

"It is generally agreed that when a plaintiff settles with one of several joint tortfeasors, the nonsettling defendants are entitled to a credit for that settlement." *McDermott,* 511 U.S. at 208, 114 S.Ct. 1461. The rationale behind this rule is that a plaintiff is entitled to be fully compensated for his injury without receiving unjust enrichment. *See In re Foote Memorial Hospital/PCIS Litigation,* 25 F.3d 406, 410 (6th Cir.1994) ("[A] plaintiff should be made whole for his injuries, but should not receive a windfall."); *Hageman v. Signal L.P. Gas, Inc.,* 486 F.2d

---

**5.** By adopting joint and several liability, it appears that in a round-about way the Court is following *Ayers.* However, the Court should clarify that it is not following *Ayers,* but rather, it is relying on *Reliable Transfer* and *McDermott.*

479, 487 (6th Cir.1973) ("[A]n injured party is entitled to receive full satisfaction for his injury only once."); *see also McDermott,* 511 U.S. at 218, 114 S.Ct. 1461 (discussing the "one satisfaction rule"). Following the general rule, the Court will allow a setoff against any judgment in this matter. The setoff will include any payments that Plaintiffs have received for the asbestos-type injuries to Lewin at issue here. This includes settlements and payments from any bankruptcy trusts.[6]

Admiralty law has traditionally been judge-made. *See Edmonds v. Compagnie Generale Transatlantique,* 443 U.S. 256, 261, 99 S.Ct. 2753, 61 L.Ed.2d 521 (1979). So in fashioning this rule for maritime asbestos cases, this Court is in "familiar waters." *McDermott,* 511 U.S. at 207, 114 S.Ct. 1461 (citing *Reliable Transfer,* 421 U.S. at 409, 95 S.Ct. 1708) ("[T]he Judiciary has traditionally taken the lead in formulating flexible and fair remedies in the law maritime"); *In re National Asbestos Litigation,* Nos. 1:90CV11000, 1:90CV5000, 1990 WL 135758, (N.D.Ohio Aug.10, 1990). ("The asbestos litigation has become the classic example of civil cases that cost too much and take too long. The Congress and the public *expect the courts to bring some measure of efficiency to this litigation.*"). This Court is of the opinion that traditional joint and several liability with *pro tanto* setoff is simply the best rule to apply in multi-defendant maritime asbestos cases.

### V. The Shipowner Defendants' Motion to Compel

In their Motion to Compel, the Shipowner Defendants seek an Order from the Court requiring Plaintiffs to answer an interrogatory concerning settlement agreements they have entered into with other entities for Lewin's asbestos injuries and to produce "proofs of claim" detailing compensation Plaintiffs have received for Lewin's injuries from bankruptcy trusts. Based on the

Court's finding above, the Shipowner Defendants' Motion is DENIED. If a jury finds that any Defendant is liable for Lewin's asbestos injuries and the jury enters a judgment, the Court will require Plaintiffs to produce to Defendants all information relating to compensation Plaintiffs have received for Lewin's injuries. This includes settlement documents and bankruptcy trust "proofs of claim." The Court will also use this information to setoff monies received by Plaintiffs against any judgment.

### VI. Motion for Leave to File an Amended Complaint

Plaintiffs seek to file an Amended Complaint that: 1) consolidates the above-captioned matters; 2) names the true parties in interest, namely Willard E. Bartel and David C. Peebles as Administrators of Lewin's Estate; and 3) adds wrongful death to the underlying cause of action. All Defendants oppose Plaintiffs' Motion for Leave to the extent the Motion seeks leave to file an Amended Complaint asserting a wrongful death claim. Defendants contend that the proposed wrongful death claim is time-barred. The Court disagrees.

The above-captioned matters were originally filed on May 4, 1993, when Lewin was still alive. Case No. 1:93CV10601 asserts claims against thirty-two (32) Shipowner Defendants under the Jones Act and under general maritime law. On the other hand, Case No. 1:93CV10602 asserts negligence and product liability claims against twenty-six (26) Manufacturer Defendants. In both cases, Plaintiffs seek damages for, *inter alia,* pain and suffering and loss of earnings during Lewin's life. On November 10, 1994, the MDL Panel transferred these matters to Judge Charles Weiner of the Eastern District of Pennsylvania for pretrial proceedings.

Lewin died on May 1, 1996. On May 2, 1996, Judge Weiner published a Memorandum Opinion and Order that "administrative-

---

6. On June 15, 2004, the Court inspected all the settlement documents and "proofs of claim" that Plaintiffs produced concerning Lewin's alleged injuries *in camera.* These documents are filed under seal with the Court. (*See* Doc. No. 241, Case No. 1:93CV10601; Doc. No. 153, Case No.

1:93CV10602.) Any Defendant will be afforded access to these documents if the jury returns a judgment against that Defendant. It is the Court's recollection that so far Plaintiffs have received less than $100,000 for Lewin's injuries.

ly dismissed" all maritime asbestos cases filed in this District without prejudice. (*See* Mem. Op. and Order of 5/2/96 at 14.[7]) In the same Opinion, Judge Weiner indicated that specified cases could be "reinstated" upon application to the Court. *Id.* at 14–15. Moreover, Judge Weiner stated that upon reinstatement, plaintiffs could amend any pleading as necessary. *Id.* at 15. In accordance with Judge Weiner's Order, on November 15, 2000, Plaintiffs filed a Motion for Reinstatement, (Doc. No. 105, Case No. 1:93CV10601), that was granted by Judge Weiner December 1, 2000. (*See* Notice of Settlement Conference at 1 [8]). At no time before the present have Plaintiffs sought to amend their Complaints to add a wrongful death claim.

 Again, Plaintiffs seek to amend their Complaints to add wrongful death claims under the Jones Act and general admiralty and maritime law.[9] (*See* Doc. No. 249, Case No. 1:93CV10601; Doc. No. 161, Case No. 1:93CV10602.) The statute of limitations for a wrongful death claim under the Jones Act is three years. *See* 46 U.S.C.App. § 688 (incorporating by reference the three-year statute of limitations contained in FELA, 45 U.S.C. §§ 56); *Miller v. Am. Heavy Lift Shipping*, 231 F.3d 242, 244 (6th Cir.2000). As a general rule, the three-year statute of limitations under the Jones Act (and FELA) begins to accrue on the seaman's date of death. *See Reading Co. v. Koons*, 271 U.S. 58, 60–64, 46 S.Ct. 405, 70 L.Ed. 835 (1926); *Baltimore & S.W.R.R. v. Carroll*, 280 U.S. 491, 495, 50 S.Ct. 182, 74 L.Ed. 566 (1930) ("*Baltimore*"); *Renaldi v. New York, N.H. & H.R.R.*, 230 F.2d 841, 845 (2d Cir.1956); *Dusek v. Pennsylvania R. Co.*, 68 F.2d 131, 131–32 (7th Cir.1933); *Rodzik v. New York Cent. R.R.*, 169 F.Supp. 803, 805

(E.D.Mich.1959); *cf. Kington v. United States*, 396 F.2d 9, 10 (6th Cir.1968) (finding that an action for wrongful death under the Federal Tort Claims Act accrued upon date of death). Thus, it is clear that the statute of limitations for a wrongful death cause of action under the Jones Act and general maritime law has run.[10] The only way that Plaintiffs could assert their wrongful death claims in an amended complaint is if the claim relates back to the date of the original pleadings under Fed.R.Civ.P. 15(c)(2).

Under Rule 15(c)(2) "[a]n amendment of a pleading relates back to the date of the original pleading when … the claim … asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth … in the original pleading." *Id.* at 15(c)(2). In *Brown v. Shaner*, 172 F.3d 927 (6th Cir. 1999), the Sixth Circuit stated:

> [Rule 15(c)(2)] is based on the notion that once litigation involving … a given transaction or occurrence has been instituted, the parties are not entitled to the protection of the statute of limitations against the later assertion by amendment of … claims that arise out of the same … transaction, or occurrence as set forth in the original pleading.

*Id.* at 932.

The Shipowner Defendants rely on *Baltimore* to support their argument that Plaintiffs' wrongful death claim does not "relate back" to their original Complaints. In *Baltimore*, a railroad employee brought an action under FELA against the defendant railroad for injuries resulting from a train collision.[11] After the employee's death, his personal representative sought leave to amend the original complaint to assert a wrongful death claim after the statute of limitations under

---

7. Attached hereto as Appendix # 1.

8. Attached hereto as Appendix # 2.

9. If no damages are permitted for a wrongful death claim under the Jones Act, then any claim for wrongful death under general admiralty and maritime law is equally unavailing. *See Szymanski v. Columbia Transp. Co., a Div. of OglebayNorton Co.*, 154 F.3d 591, 596 (6th 1998) (citing *Miller v. Am. President Lines*, 989 F.2d 1450 (6th Cir.1993)). Accordingly, the Court need only

consider whether Plaintiffs' wrongful death claim is barred under the Jones Act's three-year statute of limitations.

10. Plaintiffs do not contend that the statute of limitations has been tolled.

11. Originally the plaintiff brought his claims under state law. The trial court allowed the plaintiff leave to amend his complaint to allege claims under FELA. *See Baltimore*, 280 U.S. at 493–95, 50 S.Ct. 182.

**398**

FELA had expired. The trial court allowed the complaint to be amended and the state supreme court affirmed. However, the Supreme Court held that an amendment to assert a claim under FELA based on the employee's death rather than injury was a "new and distinct cause of action" and hence was barred if made after the statute of limitations had passed. *Id.* at 495, 50 S.Ct. 182 (reversing judgment entered after trial court granted widow of injured railroad employee leave to amend his complaint to assert claim based on his subsequent death). The Court reasoned that although an employee's claim for personal injuries and a wrongful death claim originate " 'in the same wrongful act or neglect, the two claims are quite distinct, no part of either being embraced in the other. One begins where the other ends, and a recovery upon both in the same action is not a double recovery for a single wrong, but a single recovery for a double wrong.' " *Id.* at 494–95, 50 S.Ct. 182 (quoting *St. Louis, Iron M. & S. Ry. Co. v. Craft*, 237 U.S. 648, 658, 35 S.Ct. 704, 59 L.Ed. 1160 (1915)).

■ The Shipowner Defendants contend that *Baltimore* is binding on this Court (through incorporation by reference of FELA) because this is a "Jones Act case." The Court disagrees for two reasons. First, as the Court stated previously, *see supra* at 394, this case is not simply a "Jones Act case," but rather, an admiralty case. But more importantly, *Baltimore* is inapplicable here because it was decided before the adoption of the Federal Rules of Civil Procedure in 1937. Prior to the adoption of Rule 15(c)(2), "the test employed in determining whether an amendment should relate back to the original complaint was whether or not the amendment set forth a new cause of action. If a new cause of action was set forth then the amendment would not relate back." *Murfkan v. Kahn*, 11 F.R.D. 520, 522 (S.D.Fla.1951) (citing *Missouri K. & T.R. Co. v. Wulf*, 226 U.S. 570, 33 S.Ct. 135, 57 L.Ed. 355 (1913)). The Sixth Circuit has articulated a different standard under Rule 15(c)(2).

In *Miller,* the Sixth Circuit held that a court should "permit a party to add even a *new legal theory* in an amended pleading as long as it arises out of the same transaction or occurrence." 231 F.3d at 248 (emphasis added); *see also Hageman*, 486 F.2d at 484 ("[W]here the parties are the same, ... an amendment which adds another claim arising out of the same transaction or occurrence does relate back to the date of the original complaint."); *Belle v. Ross Products Div.*, No. 2:01CV677, 2003 WL 133242, at *3 (S.D.Ohio Jan. 3, 2003) (citing *Tefft v. Seward*, 689 F.2d 637, 639 (6th Cir.1982)) ("[T]he Sixth Circuit said that where facts set forth in the original complaint relate to and support the new cause of action in the amended complaint, the amended cause of action 'is not so different as to cause prejudice to the defendant.' ") *Koon v. Lakeshore Contractors*, 128 F.R.D. 650, 653 (W.D.Mich. 1988) (citing *Hageman* ) ("[A]n added theory of liability for the same occurrence may relate back."), *aff'd without opinion*, 889 F.2d 1087 (Table), 1989 WL 137151 (6th Cir. Nov.15, 1989). Here, Plaintiffs seek to add a new claim, *i.e.* wrongful death, arising from the asbestos exposure asserted in the original Complaints. Based on the standard set forth in Rule 15(c)(2) and Sixth Circuit case law, this claim should "relate back" to the original pleadings.

For the foregoing reasons, Plaintiffs Motion to Consolidate and for Leave to File an Amended Complaint is GRANTED. Importantly, the Court will consolidate these cases for trial but *not* for pre-trial purposes. This means that counsel shall continue to file documents in both cases.[12] Plaintiffs may amend the Complaints to reflect the true parties in interest.

## VII. Conclusion

For the foregoing reasons, the Shipowner Defendants' Motion to Compel is DENIED. In addition, Plaintiffs Motion to Consolidate and for Leave to File an Amended Complaint is GRANTED [13]. This case will continue to

---

**12.** Filing documents in both cases is important because if one case is appealed and the other is not, there needs to be separate dockets in each case.

**13.** The Amended Complaint Plaintiffs shall file is attached hereto as Appendix # 3. (*See also* Doc. No. 249, Case No. 1:93CV10601; Doc. No. 161, Case No. 1:93CV10602.)

trial as scheduled. Additionally, the Court has attached the interrogatories that it expects to use at trial to this Opinion as Appendix # 4.[14]

IT IS SO ORDERED.

## APPENDIX 1

### IN THE UNITED STATES DISTRICT COURT

### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

IN RE: ASBESTOS PRODUCTS LIABILITY LITIGATION (No. VI)

This Document Relates To: ALL ACTIONS

CIVIL ACTION NO. 2 MDL 875

(Maritime Actions)

May 1, 1996

WEINER, J.

### MEMORANDUM OPINION AND ORDER

In response to a discovery request of defense counsel, and after several telephone conferences, this Court, on July 18, 1995, entered Pretrial Order No. 6 (MARDOC) directing Plaintiffs' counsel to produce materials in 262 Mardoc cases. Despite being granted several extensions of time to comply with the directives of the July 18, 1995 order, plaintiffs' counsel failed to do so. As a result, defendants moved to dismiss plaintiffs' cases. Following the entry of Show Cause Orders, the Court held a hearing on February 28, 1996 and heard argument and statements of all counsel. The parties have further supplemented their positions with additional written statements. The Court, having considered all of the material presented, will grant the motion of the defendants as modified by the attached order.

### APPENDIX 2

### NOTICE OF SETTLEMENT CONFERENCE

The Court, having received the request of the plaintiffs to reinstate and remand the attached list of cases and having determined that further settlement discussions would be appropriate for these cases, hereby reinstates these cases and sets these matters down for a settlement conference to be held in Courtroom 68, U.S. Courthouse, 601 Market Street, Philadelphia, Pennsylvania 19108, on Thursday, December 28, 2000, at 10:30 o'clock, AM. All remaining parties shall immediately exchange any remaining requested information and *shall appear with necessary authority to settle the cases. Plaintiff is directed to make, if not already done, reasonable demands upon the defendants,* and the parties should seek to negotiate these actions prior to the conference date. *Plaintiff's counsel shall send notice of this settlement conference to all remaining defense counsel.*

THE COURT NOTES THAT IN MANY RECENT CONFERENCES, BOTH PLAINTIFF AND DEFENSE COUNSEL HAVE APPEARED UNFAMILIAR WITH THEIR CASES AND NOT PREPARED TO MAKE REASONABLE EFFORTS TO NEGOTIATE SETTLEMENTS.

### APPENDIX 3

### (PROPOSED) AMENDED COMPLAINT

NOW COME Plaintiffs, Willard E. Bartel and David C. Peebles, Administrators of the Estate of Samuel L. Lewin, Deceased, by and through counsel undersigned, and declaring against the above-named Defendants, state as follows:

1. Plaintiffs bring this action against two groups of Defendants: (a) the Shipowner employers upon whose vessels Plaintiffs' decedent sailed throughout his entire sailing career as a merchant mariner assigned to the engine department as specified in his Vessel Service History which is attached to this Complaint (Exhibit A) and incorporated herein as if fully set forth herein, and (b) a Manufacturer Defendant who manufactured and/or distributed asbestos-containing products to which Plaintiffs' decedent was exposed during his employment as a mariner

---

**14.** Interrogatory Nos. 13 and 14 are not necessarily an all inclusive list of damage elements. In addition, the interrogatories are submitted subject to suggestions on how they may be revised.

aboard the above-referenced vessels and due to which Plaintiffs' decedent suffered severe injuries and losses from which he died.

### Subject Matter Jurisdiction and Governing Law

2. This Court possesses concurrent original jurisdiction over the subject matter of this Complaint based upon Article III, Section 2 of the Constitution of the United States, as this case arises under an Act of Congress properly termed the Jones Act, 46 USC § 688, *et seq.*, as well as actions for unseaworthiness and product liability under the General Admiralty and Maritime Law wherein Plaintiffs' decedent, at all times relevant, was a merchant mariner who served his employers aboard ships owned and/or operated by the said Shipowner Defendants, which vessels utilized and carried asbestos and asbestos-containing products and other hazardous products to which Plaintiffs' decedent was exposed to the detriment of his health. Further, this Court possesses jurisdiction of this cause by virtue of 28, USC § 1332, whereby the parties reside in different states, Defendants being corporations incorporated under a state business in a state or sovereignty other than the state where Plaintiffs reside; but in the event of individual variance therefrom, then Plaintiffs hereby invoke Rule 9(h) of the Federal Rules of Civil Procedure constituting an admiralty cause; and the amount in controversy as to the named Plaintiffs exceeds Seventy–Five Thousand ($75,000.00) Dollars.

3. The Jones Act and General Admiralty and Maritime Law, provide the law governing this cause of action to the exclusion of state substantive law relating to personal injury and wrongful death actions.

### General Allegations

4. On or about the entirety of his sea service career, Plaintiffs' decedent was required by his employers to perform duties which included the constant exposure to asbestos friable fibers causing him to breathe into his system carcinogenic asbestos dust resulting in harm to Plaintiffs' decedent, including a form of cancer commonly known as mesothelioma. These events of harm occurred constantly and while in many waters and ports-of-call wherein venue, no matter where laid, is inconvenient to the numerous scattered parties herein, along with multiple witnesses thereto.

5. The asbestos and asbestos-containing products found aboard the vessels upon which Plaintiffs' decedent sailed are known to be highly toxic to mankind, and the human body can be contaminated by asbestos and asbestos-containing products through inhalation and ingestion.

6. Defendants, all of them, knew or should have known, of the dangers associated with exposure to asbestos and asbestos-containing products in the workplace.

7. Plaintiffs' decedent was exposed to dangerous and unlawful concentrations of asbestos in the ambient air, in potable water and food furnished by his employer due to his assigned work and/or in close proximity of said asbestos and asbestos-containing products.

8. Defendants, all of them, knew with substantial certainty that harmful contact with Plaintiffs' decedent's person would result from his exposure to asbestos present aboard the vessels upon which he served through the products that were produced and/or supplied to or brought aboard the vessels upon which Plaintiffs' decedent worked.

9. The Manufacturer Defendant knew, at times relevant herein, that its asbestos and/or asbestos-containing products posed a significant risk to human health, through inhalation and ingestion, and yet the Manufacturer Defendant with willful and wanton disregard for Plaintiffs' decedent's safety and human health, failed to test and/or reveal their test results, failed to warn users of the dangers of exposure to said products in marketing and/or placing said products into the stream of commerce giving rise to exemplary and punitive damages under General Admiralty and Maritime Law.

10. Harmful contamination with Plaintiffs' decedent's person occurred due to the asbestos and asbestos-containing products found and/or utilized aboard the vessels upon

which Plaintiffs' decedent sailed including, but not limited to, the asbestos and asbestos-containing products that the Manufacturer Defendant produced and/or supplied, and Plaintiffs' decedent was in fact injured as a result of his continued exposure to said products during the course of his career as a mariner.

11. Defendants, jointly and severally, breached their duty to Plaintiff's decedent in the following particulars, including but not limited to:

 (a) Failed to adequately warn Plaintiff's decedent of the dangerous characteristics of asbestos and asbestos-containing products;

 (b) Failed to provide Plaintiff's decedent with the information as to what would be reasonably safe and sufficient wearing apparel and proper protective equipment and appliances, to protect Plaintiff's decedent from being harmed and disabled by exposure to asbestos and asbestos-containing materials;

 (c) Failed to place adequate warnings on said asbestos and asbestos-containing materials, to warn of the health hazards associated with coming in contact with said products.

 (d) Failed to exercise reasonable care to publish, adopt and enforce safety plans and/or a safe method of handling and installing asbestos and asbestos-containing materials;

 (e) Failed to adopt and utilize a substitute material to eliminate asbestos fibers in the products produced and/or utilized aboard the aforestated vessels;

 (f) Failed to test asbestos and asbestos-containing material to determine their disease causing propensities prior to distributing and/or utilizing releasing these products, and if in fact any Defendant tested these products, then said Defendants were negligent in concealing the results from the public;

 (g) Failed to warn of the scientifically recognized synergism between exposure to asbestos in conjunction with smoking and other agents;

 (h) Failed to act in a reasonable and prudent manner.

12. As a direct and proximate result of Defendants' aforementioned tortious acts, Plaintiff's decedent sustained serious, incurable and progressive asbestos-related disease. Plaintiff's decedent contracted an asbestos-related disease in the form of a cancer, commonly known as mesothelioma, and suffered other bodily injuries including: great pain of mind and body, shock, disgrace, outrage, humiliation, indignity, disability, loss of the joys, pleasures and vitalities of life, exacerbation of existing disease and ultimately lost his life in succumbing to this illness.

13. Plaintiff's decedent developed pleural abnormalities, interstitial fibrosis, asbestosis, lung cancer, mesothelioma, and/or other malignant cancer, and as a result, was extremely fearful of developing such cancer and/or extremely fearful of the ravages of such cancers from which he suffered.

14. Plaintiff's decedent experienced severe mental anguish, great pain and suffered the ravages of cancer and/or progressive shortness of breath.

15. As a result of Plaintiff's decedent's asbestos-related condition, he suffered great pain of mind and body and met a premature death.

16. Plaintiff's decedent incurred medical bills and other expenses. Plaintiff's decedent sustained wage losses in an indeterminate amount, which amount will be demonstrated at trial.

17. By the wrongful actions, neglect and/or default, Defendants caused Plaintiffs' decedent's wrongful death and further all causes of action filed on behalf of Plaintiffs' decedent prior to his death survive.

### CAUSES OF ACTION AGAINST THE SHIPOWNER DEFENDANTS

### COUNT I

### JONES ACT CLAIM

Now come Plaintiffs and hereby realleges and incorporates by reference all of the previous allegations set forth above and further

**402**

states as against the Shipowner Defendants, that:

18. As a direct approximate result of the negligence under the Jones Act, 46 U.S.C. § 688 et seq., Plaintiffs' decedent suffered from incurable cancer known as mesothelioma, along with the sequelae thereof.

19. The Shipowners were negligent in their failure:

(a) To provide adequate warning to the crew of the hazards of asbestos utilized and/or carried shipboard;

(b) To provide adequate training and supervision to the crew in the use and/or cleanup of asbestos and asbestos-containing products;

(c) To provide adequate equipment for the protection of the crew in the use of asbestos and/or asbestos-containing products; and

20. As a direct and proximate result of the acts and omissions aforestated by each of the defending parties herein, Plaintiffs' decedent sustained injuries as an indivisible, cumulative cause of each of the stated Defendants as contemplated in *American Fire & Casualty Company v. Finn,* 341 U.S. 6, 71 S.Ct. 534, 95 L.Ed. 702 (1951). Plaintiffs seek damages as below stated, *inter alia:*

(a) Loss of earnings and earnings capacity;

(b) Conscious pain and suffering, past and future;

(c) Mental anguish, fright and shock, embarrassment, humiliation or mortification, past or future;

(d) Medical expenses and costs;

(e) Household services;

(f) Loss of pleasure, including social and recreational amenities, past and future;

(g) Loss of society and companionship;

(h) Death by wrongful acts;

(i) Loss of support, costs of estate planning, and funeral expenses; and

(j) Any and all other elements of damages cognizable in law or which may be raised, pleaded and proved by the Plaintiffs during the pendency of this cause and at the time of trial.

WHEREFORE, Plaintiffs demand trial by jury and judgment against Defendants, jointly and severally, in an amount exceeding the threshold jurisdictional requirement or otherwise in a figure in excess of One Hundred Thousand ($100,000.00) Dollars to be more particularly calculated and adjusted upwards during the pendency of this cause and Plaintiffs further seek interest and costs to e taxed in accordance with law and such other and further measures of relief as the Court may determine to be appropriate and just in the premises.

### COUNT II

### *UNSEAWORTHINESS UNDER GENERAL ADMIRALTY AND MARITIME LAW*

NOW COME Plaintiffs and hereby alleges and incorporates by reference all the previous allegations set forth above and further states as against Shipowner Defendants that:

21. As a direct and proximate result of the negligence of the unseaworthiness of the vessels, Plaintiffs' decedent suffered and died from incurable cancer known as mesothelioma, along with the sequelae thereof.

22. The vessels owned and/or operated by Shipowner Defendants were unseaworthy under the General Admiralty and Maritime Law in that their vessels presented an unreasonably unsafe working environment, whereby the shipowner Defendants substantially breached the implied warranty of providing a reasonably safe vessel and working conditions, which was to be reasonably fit for the purpose for which it was intended.

23. The vessels were unseaworthy in part due to their lack of necessary equipment to perform tasks in safety; the lack of adequate training and supervision in the use of a carcinogenic known as asbestos and the lack of adequate ventilation and personal protective measures to reduce the risk of injury to the crew.

24. As a direct and proximate result of the acts and omissions aforestated by each of the defending parties herein, Plaintiffs' dece-

dent sustained injuries as an indivisible, cumulative cause of each of the stated Defendants as contemplated in *American Fire & Casualty Company v. Finn*, 341 U.S. 6, 71 S.Ct. 534, 95 L.Ed. 702 (1951). Plaintiffs seek damages as below stated, *inter alia:*

(a) Loss of earnings and earnings capacity;

(b) Conscious pain and suffering, past and future;

(c) Mental anguish, fright and shock, embarrassment, humiliation or mortification, past or future;

(d) Medical expenses and costs;

(e) Household services;

(f) Loss of pleasure, including social and recreational amenities, past and future;

(g) Loss of society and companionship;

(h) Death by wrongful acts;

(i) Loss of support, costs of estate planning, and funeral expenses; and

(j) Any and all other elements of damages cognizable in law or which may be raised, pleaded and proved by the Plaintiffs during the pendency of this cause and at the time of trial.

WHEREFORE, Plaintiffs demand trial by jury and judgment against Defendants, jointly and severally, in an amount exceeding the threshold jurisdictional requirement or otherwise in a figure in excess of One Hundred Thousand ($100,000.00) Dollars to be more particularly calculated and adjusted upwards during the pendency of this cause and Plaintiffs further seek interest and costs to be taxed in accordance with law and such other and further measures of relief as the Court may determine to be appropriate and just in the premises.

## CAUSES OF ACTION AGAINST MANUFACTURER DEFENDANT (GARLOCK, INC.)

### COUNT I

### NEGLIGENCE

25. Plaintiffs hereby incorporate by reference the allegations made in paragraphs 1 through 17 as more fully set forth herein.

26. During his employment aboard merchant vessels, Plaintiffs' decedent used, handled and/or was in a proximity of others who used and handled asbestos and asbestos-containing products which caused him to contract a severe health affliction in the form of a cancer known as mesothelioma. The asbestos and asbestos-containing products in and about the vessels upon which Plaintiffs' decedent worked are known to be highly toxic to mankind and the human body can be contaminated by asbestos and asbestos-containing products through inhalation and/or ingestion.

27. Defendant knew or should have known of the dangers associated with exposure to the carcinogens in asbestos and asbestos-containing products.

28. Defendant is or was, and at all times material hereto, engaged in the business of designing, manufacturing, distributing and/or assembling various asbestos products for sale to and use by shipowners and/or shipyards, including Defendants herein.

29. Defendant intended that its products be used in or about vessels, including those referenced herein. Defendant sold and placed its products in the stream of commerce for sale.

30. At the time of the manufacture and/or sale of asbestos and asbestos-containing products by Defendant to Plaintiffs' decedent's employers, Defendant knew and/or had reason to know that Plaintiffs' decedent would be exposed to the above-referenced products.

31. Each of the products manufactured by Defendant, at all times relevant, were being used in a manner for which they were intended and in a manner which was reasonably foreseeable.

32. During the times material hereto, Defendant owed Plaintiffs' decedent a duty of ordinary care in its marketing, designing, selling, labeling, manufacturing and/or distributing asbestos and/or asbestos-containing products.

33. During times material hereto, Defendant, jointly and severally, owed a duty to Plaintiffs' decedent and all others similarly

situated to manufacture, prepare and market its products in a manner reasonably calculated to prevent them to be used without a danger of the health and safety of persons such as Plaintiffs' decedent. Furthermore, Defendant owed a duty to warn and instruct regarding the uses of its asbestos-containing products.

34. During times material hereto, Defendant manufactured and distributed, supplied and/or otherwise placed within said vessels upon which Plaintiffs' decedent served asbestos-containing products of which Defendant under the exercise of ordinary care or should and/or could have known were inherently defective, ultra hazardous, dangerous, poisonous, or otherwise highly harmful to Plaintiffs' decedent.

35. Plaintiffs' decedent's exposures were foreseeable by Defendant.

36. Defendant breached its duty of ordinary care and was negligent in that it knew and/or should have known that its asbestos-containing products were likely to injure and cause respiratory disease in persons who were exposed to its products without warnings or adequate warnings, that exposure to Defendant's asbestos-containing products would create hazardous, unsafe work areas and risk to the health of Plaintiff's decedent. Furthermore, Defendant:

(a) Failed to properly design and manufacture the products;

(b) Failed to formulate their products so as to minimize or eliminate the toxic effects upon their uses;

(c) Failed to properly prepare, inspect, and process said products so they would not be transferred from the manufacturers' possession in a defective state and that said products would be reasonably fit for the particular purpose intended and of merchantable quality;

(d) Failed to properly manufacture the products;

(e) Failed to accurately label and give adequate warnings and instructions regarding the composition and use of the products and their possible toxic effects upon their users; and

(f) Failed to properly market and advertise said products;

37. Defendant knew for decades of the hazards of asbestos and asbestos-containing products, or in the exercise of reasonable care, should have known of these hazards. Notwithstanding this knowledge, it manufactured, supplied, advertised and sold said products. Defendant, in a conscious disregard for the safety of Plaintiffs' decedent and others, without giving any notice of defects to Plaintiffs' decedent, placed and persisted in placing the products described above into the stream of commerce, causing Plaintiffs' decedent's exposure to asbestos thereby entitling Plaintiffs' decedent to an award of exemplary and punitive damages according to proof.

38. As a direct and proximate result of the acts and omissions aforestated by each of the defending parties herein, Plaintiffs' decedent sustained injuries as an indivisible, cumulative cause of each of the stated Defendants as contemplated in *American Fire & Casualty Company v. Finn,* 341 U.S. 6, 71 S.Ct. 534, 95 L.Ed. 702 (1951). Plaintiffs seek damages as below stated, *inter alia:*

(a) Loss of earnings and earnings capacity;

(b) Conscious pain and suffering, past and future;

(c) Mental anguish, fright and shock, embarrassment, humiliation or mortification, past or future;

(d) Medical expenses and costs;

(e) Household services;

(f) Loss of pleasure, including social and recreational amenities, past and future;

(g) Loss of society and companionship;

(h) Death by wrongful acts;

(i) Loss of support, costs of estate planning, and funeral expenses; and

(j) Exemplary and punitive damages; and

(k) Any and all other elements of damages cognizable in law or which may be raised, pleaded and proved by the Plaintiffs during the pendency of this cause and at the time of trial.

WHEREFORE, Plaintiffs demand trial by jury and judgment against Defendants, jointly and severally, in an amount exceeding the threshold jurisdictional requirement or otherwise in a figure in excess of One Hundred Thousand ($100,000.00) Dollars to be more particularly calculated and adjusted upwards during the pendency of this cause and Plaintiffs further seek interest and costs to be taxed in accordance with law and such other and further measures of relief as the Court may determine to be appropriate and just in the premises.

## COUNT II

### STRICT PRODUCT LIABILITY

NOW COME Plaintiffs and hereby reallege and incorporate paragraphs 1 through 17 and paragraphs 25 through 38 as though more fully set forth herein and further states:

39. Defendant Manufacturer designed, distributed, supplied, labeled, and/or placed into the stream of commerce asbestos and asbestos-containing products.

40. Said products were defective and constituted an unreasonable risk of harm to persons, including Plaintiffs' decedent, who were exposed to asbestos and asbestos friable dust contained in said products.

41. The defective condition of the products existed at the time they were placed into the stream of commerce by Defendant and continued to exist without substantial change at the time of Plaintiffs' decedent's exposure to them during the course of his employment as a merchant mariner as aforestated.

42. Defendant knew, or should have known, of the unreasonably dangerous condition of the products and the substantial danger to human health that condition created.

43. Defendant failed to test its products and further failed to adequately inform, or warn Plaintiffs' decedent of the dangers and harmful character of the products.

44. As a direct and proximate result of the dangerous and defective condition of said products that Defendant placed in the stream of commerce, Plaintiffs' decedent suffered injuries and losses. Defendant is liable to Plaintiffs' decedent under the theory of strict liability and tort as described in Section 402(a) of the Restatement(2d) of Torts.

45. As a direct and proximate result of the acts and omissions aforestated by each of the defending parties herein, Plaintiffs' decedent sustained injuries as an indivisible, cumulative cause of each of the stated Defendants as contemplated in *American Fire & Casualty Company v. Finn*, 341 U.S. 6, 71 S.Ct. 534, 95 L.Ed. 702 (1951). Plaintiffs seek damages as below stated, *inter alia:*

(a) Loss of earnings and earnings capacity;

(b) Conscious pain and suffering, past and future;

(c) Mental anguish, fright and shock, embarrassment, humiliation or mortification, past or future;

(d) Medical expenses and costs;

(e) Household services;

(f) Loss of pleasure, including social and recreational amenities, past and future;

(g) Loss of society and companionship;

(h) Death by wrongful acts;

(i) Loss of support, costs of estate planning, and funeral expenses; and

(j) Exemplary and punitive damages; and

(k) Any and all other elements of damages cognizable in law or which may be raised, pleaded and proved by the Plaintiffs during the pendency of this cause and at the time of trial.

WHEREFORE, Plaintiffs demand trial by jury and judgment against Defendants, jointly and severally, in an amount exceeding the threshold jurisdictional requirement or otherwise in a figure in excess of One Hundred Thousand ($100,000.00) Dollars to be more particularly calculated and adjusted upwards during the pendency of this cause and Plaintiffs further seek interest and costs to be taxed in accordance with law and such other and further measures of relief as the Court may determine to be appropriate and just in the premises.

Respectfully submitted,

THE JAQUES ADMIRALTY LAW FIRM, P.C.

_____
DONALD A. KRISPIN
DUANE C. MARSDEN
Attorney for plaintiff
645 Griswold, Ste. 1370
Detroit, MI 48226
(313) 961–1080

Dated: July 8, 2004

### JURY DEMAND

Plaintiffs hereby demands trial by jury of the above-entitled cause.

THE JAQUES ADMIRALTY LAW FIRM, P.C.

_____
DONALD A. KRISPIN
DUANE C. MARSDEN
Attorney for plaintiff
645 Griswold, Ste. 1370
Detroit, MI 48226
(313) 961–1080

Dated: July 8, 2004

### APPENDIX 4

### INTERROGATORY # 1

We, the jury, having been duly impaneled and sworn, do hereby answer Interrogatory No. 1 as follows:

### INTERROGATORY NO. 1

Has Plaintiff proven by a preponderance of the evidence that the decedent, Samuel L. Lewin, developed mesothelioma as a result of occupational exposure to asbestos?

_____(Yes or No)

_____ _____ _____

_____ _____ _____

_____ _____ _____

_____ _____
Foreperson (Date)

IF THE ANSWER IS YES, GO TO INTER-ROGATORY NO. 2.
IF THE ANSWER IS NO, YOUR WORK IS COMPLETE.
CALL THE COURTROOM DEPUTY

### INTERROGATORY # 2

We, the jury, having been duly impaneled and sworn, do hereby answer Interrogatory No. 2 as follows:

### INTERROGATORY NO. 2

Has Plaintiff proven by a preponderance of the evidence that Mr. Lewin inhaled or otherwise ingested asbestos dust or fibers in the course of employment on the following Shipowners' vessels?

### [ANSWER YES or NO AS TO EACH DEFENDANT SHIPOWNER]

| | |
|---|---|
| American Oil Co. (now known as Farrell Lines, Inc.) | _____ |
| AMOCO Shipping Co. | _____ |
| Balbutte Shipping Co. | _____ |
| Hess, Inc. (now known as Amerada Hess Corporation) | _____ |
| Keystone Shipping Co. | _____ |
| Keystone Tanker Co. | _____ |
| Manhattan Tanker Co. | _____ |
| Marine Transport Lines, Inc. | _____ |
| Maritime Overseas Corp. (now known as OSG Ship Management, Inc.) | _____ |
| Montpelier Tanker Co. | _____ |

_____ _____ _____

_____ _____ _____

_____ _____ _____

_____ _____
Foreperson (Date)

IF THE ANSWER IS YES AS TO ANY DEFENDANT, GO TO INTERROGATORY NO. 3. [DO NOT CONSIDER ANY DEFENDANT FOR WHICH YOU ANSWERED NO IN THIS INTERROGATORY IN INTERROGATORY NO. 4]

IF THE ANSWER IS NO AS TO EVERY DEFENDANT, GO TO INTERROGATORY NO. 5

### INTERROGATORY # 3

We, the jury, having been duly impaneled and sworn, do hereby answer Interrogatory No. 3 as follows:

### INTERROGATORY NO. 3

Has Plaintiff proved by a preponderance of the evidence the following Shipowners failed to exercise reasonable and ordinary care in exposing Mr. Lewin to asbestos, i.e. were the following Shipowners negligent?

[ANSWER YES or NO AS TO EACH DEFENDANT SHIPOWNER FOR WHOM YOU ANSWERED YES IN INTERROGATORY NO. 2]

American Oil Co.
(now known as Farrell Lines, Inc.) ———————
AMOCO Shipping Co. ———————
Balbutte Shipping Co. ———————
Hess, Inc.
(now known as Amerada Hess
Corporation) ———————
Keystone Shipping Co. ———————
Keystone Tanker Co. ———————
Manhattan Tanker Co. ———————
Marine Transport Lines, Inc. ———————
Maritime Overseas Corp.
(now known as OSG Ship
Management, Inc.) ———————
Montpelier Tanker Co. ———————

——————— ——————— ———————

——————— ——————— ———————

——————— ——————— ———————

——————— ———————
Foreperson (Date)

IF THE ANSWER IS YES AS TO ANY DEFENDANT, GO TO INTERROGATORY NO. 4. [DO NOT CONSIDER ANY DEFENDANT FOR WHICH YOU ANSWERED NO IN THIS INTERROGATORY IN INTERROGATORY NO. 4]

IF THE ANSWER IS NO AS TO EVERY DEFENDANT, GO TO INTERROGATORY NO. 5

### INTERROGATORY # 4

We, the jury, having been duly impaneled and sworn, do hereby answer Interrogatory No. 4 as follows:

### INTERROGATORY NO. 4

Has Plaintiff proved by a preponderance of evidence the Shipowners' negligence contributed in some way towards causing Mr. Lewin's mesothelioma?

[ANSWER YES or NO AS TO EACH DEFENDANT SHIPOWNER FOR WHOM YOU ANSWERED YES IN INTERROGATORY NOS. 2 AND 3]

American Oil Co.
(now known as Farrell Lines, Inc.) ———————
AMOCO Shipping Co. ———————
Balbutte Shipping Co. ———————
Hess, Inc.
(now known as Amerada Hess
Corporation) ———————
Keystone Shipping Co. ———————
Keystone Tanker Co. ———————
Manhattan Tanker Co. ———————
Marine Transport Lines, Inc. ———————
Maritime Overseas Corp.
(now known as OSG Ship
Management, Inc.) ———————
Montpelier Tanker Co. ———————

——————— ———————
Foreperson (Date)

GO TO INTERROGATORY NO. 5.

### INTERROGATORY # 5

We, the jury, having been duly impaneled and sworn, do hereby answer Interrogatory No. 5 as follows:

### INTERROGATORY NO. 5

Has Plaintiff proved by a preponderance of evidence that the vessel of the following Shipowners contained an unseaworthy condition?

[ANSWER YES or NO AS TO EACH DEFENDANT SHIPOWNER]

American Oil Co.
(now known as Farrell Lines, Inc.) ———————
AMOCO Shipping Co. ———————
Balbutte Shipping Co. ———————
Hess, Inc.
(now known as Amerada Hess
Corporation) ———————
Keystone Shipping Co. ———————
Keystone Tanker Co. ———————
Manhattan Tanker Co. ———————
Marine Transport Lines, Inc. ———————
Maritime Overseas Corp.
(now known as OSG Ship
Management, Inc.) ———————
Montpelier Tanker Co. ———————

——————— ——————— ———————

——————— ——————— ———————

——————— ——————— ———————

——————— ———————
Foreperson (Date)

IF THE ANSWER IS YES AS TO ANY DEFENDANT, GO TO INTERROGATORY NO. 6. [DO NOT CONSIDER ANY DEFENDANT FOR WHICH YOU ANSWERED NO IN THIS INTERROGATORY IN INTERROGATORY NO. 6]

IF THE ANSWER IS NO AS TO EVERY DEFENDANT, GO TO INTERROGATORY NO. 7

### INTERROGATORY # 6

We, the jury, having been duly impaneled and sworn, do hereby answer Interrogatory No. 6 as follows:

### INTERROGATORY NO. 6

Has Plaintiff proved by a preponderance of the evidence that the unseaworthy on the Shipowners' vessel played a substantial part in bringing about or actually causing Mr. Lewin's mesothelioma and that the mesothelioma was either a direct result or a reasonably probable consequence of the unseaworthiness?

[ANSWER YES OR NO AS TO EACH DEFENDANT SHIPOWNER FOR WHOM YOU ANSWERED YES IN INTERROGATORY NO. 5]

American Oil Co. (now known as Farrell Lines, Inc.) _____
AMOCO Shipping Co.
Balbutte Shipping Co. _____
Hess, Inc. (now known as Amerada Hess Corporation) _____
Keystone Shipping Co. _____
Keystone Tanker Co. _____
Manhattan Tanker Co. _____
Marine Transport Lines, Inc. _____
Maritime Overseas Corp. (now known as OSG Ship Management, Inc.) _____
Montpelier Tanker Co. _____

_____ _____ _____

_____ _____ _____

_____ _____ _____

Foreperson (Date)

GO TO INTERROGATORY NO. 7

### INTERROGATORY # 7

We, the jury, having been duly impaneled and sworn, do hereby answer Interrogatory No. 7 as follows:

### INTERROGATORY NO. 7

Has Plaintiff proved by a preponderance of the evidence that Mr. Lewin inhaled or otherwise ingested asbestos dust or fibers from products manufactured or sold by Garlock, Inc. (now known as Garlock Sealing Technologies, LLC)?

_____(Yes or No)

_____ _____ _____

_____ _____ _____

_____ _____ _____

_____ _____

Foreperson (Date)

IF THE ANSWER IS YES, GO TO INTERROGATORY NO. 8

IF THE ANSWER IS NO, GO TO INTERROGATORY NO. 11

### INTERROGATORY # 8

We, the jury, having been duly impaneled and sworn, do hereby answer Interrogatory No. 8 as follows:

### INTERROGATORY NO. 8

Has Plaintiff proved by a preponderance of the evidence that at the time Garlock, Inc. manufactured or sold the products Mr. Lewin was exposed to, the products were in a defective condition making the products unreasonably dangerous to the user?

_____(Yes or No)

_____ _____ _____

_____ _____ _____

_____ _____ _____

Foreperson (Date)

IF THE ANSWER IS YES, GO TO INTERROGATORY NO. 9

IF THE ANSWER IS NO, GO TO INTERROGATORY NO. 11

### INTERROGATORY # 9

We, the jury, having been duly impaneled and sworn, do hereby answer Interrogatory No. 9 as follows:

### INTERROGATORY NO. 9

Has Plaintiff proved by a preponderance of the evidence that the products manufactured or sold by Garlock, Inc. were defective at the time of sale and that the products reached Mr. Lewin without substantial change in their condition?

_____(Yes or No)

_____ _____ _____

_____ _____ _____

_____ _____ _____

_____ _____
Foreperson (Date)

IF THE ANSWER IS YES, GO TO INTERROGATORY NO. 10

IF THE ANSWER IS NO, GO TO INTERROGATORY NO. 12

### INTERROGATORY # 10

We, the jury, having been duly impaneled and sworn, do hereby answer Interrogatory No. 10 as follows:

### INTERROGATORY NO. 10

Has Plaintiff proved by a preponderance of the evidence that the defective condition in the products were a "legal cause" of Mr. Lewin's mesothelioma?

_____(Yes or No)

_____ _____ _____

_____ _____ _____

_____ _____ _____

_____ _____
Foreperson (Date)

IF YOU ANSWER YES, GO TO INTERROGATORY NO. 11

IF YOU ANSWERED NO, GO TO INTERROGATORY NO. 12

### INTERROGATORY # 11

We, the jury, having been duly impaneled and sworn, do hereby answer Interrogatory No. 11 as follows:

### INTERROGATORY NO. 11

Have Defendants proved by a preponderance of the evidence that Mr. Lewin was negligent in the manner claimed by Defendants and was such negligence the "legal cause" of his own injury?

_____(Yes or No)

If you answered yes, what was Mr. Lewin's percentage of fault out of 100% as compared to Defendants?

_____(Percentage out of 100%)

_____ _____ _____

_____ _____ _____

_____ _____ _____

_____ _____
Foreperson (Date)

GO TO INTERROGATORY NO. 12

### INTERROGATORY # 12

We, the jury, having been duly impaneled and sworn, do hereby answer Interrogatory No. 12 as follows:

### INTERROGATORY NO. 12

Has Plaintiff proved by a preponderance of the evidence that any of the follow Defendants negligently exposed Mr. Lewin to asbestos and that the expose was the direct, proximate cause of Mr. Lewin's death?

[ANSWER YES OR NO AS TO EACH DEFENDANT]

American Oil Co.
 (now known as Farrell Lines, Inc.) ———————
AMOCO Shipping Co. ———————
Balbutte Shipping Co. ———————
Garlock, Inc. ———————
 (now known as Garlock Sealing
 Tech., LLC)
Hess, Inc. ———————
 (now known as Amerada Hess
 Corporation)
Keystone Shipping Co. ———————
Keystone Tanker Co. ———————
Manhattan Tanker Co. ———————
Marine Transport Lines, Inc. ———————
Maritime Overseas Corp. ———————
 (now known as OSG Ship
 Management, Inc.)
Montpelier Tanker Co. ———————

——————— ——————— ———————

——————— ——————— ———————

——————— ———————

Foreperson (Date)

IF YOU ANSWER YES AS TO ANY DEFENDANT, GO TO INTERROGATORY NO. 13 [IF YOU ANSWER NO AS TO ALL DEFENDANTS, YOU ANSWERED NO TO ALL DEFENDANTS IN INTERROGATORY NOS. 2–4 AND NOS. 5–6 AND YOU ANSWERED NO TO ANY OF INTERROGATORY NOS. 7–10 YOU WORK IS DONE]

CALL THE COURTROOM DEPUTY

*INTERROGATORY # 13*

We, the jury, having been duly impaneled and sworn, do hereby answer Interrogatory No. 13 as follows:

*INTERROGATORY NO. 13*

Plaintiff has proved by a preponderance of the evidence that the following amount is full and just compensation for the following elements from the date of Mr. Lewin's mesothelioma until his date of death:

Pain and suffering——————— *($———————)
Loss of earnings——————— *($———————)
Medical and funeral expenses——— *($———————)
Mental Anguish——————— *($———————)
Total of above——————— *($———————)

* State the amount in words and figures, for example, One Hundred Dollars ($100.00)

——————— ——————— ———————

——————— ——————— ———————

——————— ——————— ———————

——————— ———————

Foreperson (Date)

GO TO INTERROGATORY NO. 14

*INTERROGATORY # 14*

We, the jury, having been duly impaneled and sworn, do hereby answer Interrogatory No. 14 as follows:

*INTERROGATORY NO. 14*

Plaintiff has proved by a preponderance of the evidence that the following amount is full and just compensation for future damages incurred as a result of Mr. Lewin's death:

Loss of future earnings——————— *($———————)
Loss of society——————— *($———————)
Loss of support——————— *($———————)
Loss of pleasure——————— *($———————)
Total of above——————— *($———————)

* State the amount in words and figures, for example, One Hundred Dollars ($100.00)

——————— ——————— ———————

——————— ——————— ———————

——————— ——————— ———————

——————— ———————

Foreperson (Date)

YOUR WORK IS COMPLETE

CALL THE COURTROOM DEPUTY